SUTTER *v.* KALAMAZOO STOVE & FURNACE CO.

1. WORKMEN'S COMPENSATION—TUBERCULOSIS.
   Tuberculosis is not compensable under the workmen's compensation act as amended by provisions relating to occupational diseases (Act No. 10, pt. 7, Pub. Acts 1912 [1st Ex. Sess.], as added by Act No. 61, Pub. Acts 1937).

2. SAME—SILICOSIS.
   Silicosis is only compensable under the occupational disease amendment of the workmen's compensation act when it is caused by mining (Act No. 10, pt. 7, § 2, Pub. Acts 1912 [1st Ex. Sess.], as added by Act No. 61, Pub. Acts 1937).

3. SAME—PNEUMOCONIOSIS.
   Pneumoconiosis is compensable under the occupational disease amendment of the workmen's compensation act when it is caused by quarrying, cutting, crushing, grinding or polishing of metal (Act No. 10, pt. 7, § 2, Pub. Acts 1912 [1st Ex. Sess.], as added by Act No. 61, Pub. Acts 1937).

4. SAME—OCCUPATIONAL DISEASES—CONSTRUCTION OF STATUTES.
   The occupational disease amendment of the workmen's compensation act is in derogation of the common law and is to receive a strict construction by the courts (Act No. 10, pt. 7, Pub. Acts 1912 [1st Ex. Sess.], as added by Act No. 61, Pub. Acts 1937).

5. SAME—CONSTRUCTION OF STATUTES.

The workmen's compensation act is in derogation of the common law and its measure of relief may not be extended beyond its express terms either by application of principles of equity or common-law adaptations.

6. SAME—PNEUMOCONIOSIS—MOLDER—PROXIMATE CAUSE.

Death of molder, employed in poorly ventilated foundry room adjoining a mounting room where emery wheel grinding and sand blasting of castings were done, which were no part of a molder's work, due to bilateral diffused pneumoconiosis and silicosis and active proliferated tuberculosis with cavitation would not entitle dependents to an award of workmen's compensation even if pneumoconiosis were the chief cause of death since that disease was not contracted while deceased was engaged in "quarrying, cutting, crushing, grinding or polishing of metal" as provided in the occupational disease amendment of the workmen's compensation act (Act No. 10, pt. 7, §§ 1[c], 2, Pub. Acts 1912 [1st Ex. Sess.], as added by Act No. 61, Pub. Acts 1937; 2 Comp. Laws 1929, § 8341).

7. STATUTES—COURTS.

The courts must enforce a statute as they find it.

8. WORKMEN'S COMPENSATION—OCCUPATIONAL DISEASES—CONSTRUCTION OF STATUTES.

The ocupational disease amendment of the workmen's compensation act must be read and construed as a whole.

9. SAME—OCCUPATIONAL DISEASES—CONSTRUCTION OF STATUTES.

In construing the occupational disease amendment to the workmen's compensation act wherein is listed a schedule of diseases under column headed "disabilities arising from" followed by a second column captioned "caused by," only the diseases listed and included within the qualifying words are compensable (Act No. 10, pt. 7, § 2, Pub. Acts 1912 [1st Ex. Sess.], as added by Act No. 61, Pub. Acts 1937).

Appeal from Department of Labor & Industry. Submitted January 15, 1941. (Docket No. 61, Calendar No. 41,391.) Decided April 8, 1941. Rehearing denied May 21, 1941.

Essie Sutter, wife of Jacob Sutter, deceased, presented her claim against Kalamazoo Stove & Furnace Company, employer, for compensation for

death of decedent.  From order denying compensation, plaintiff appeals.  Affirmed.

*Edward J. Ryan,* for plaintiff.

*Alexander, McCaslin & Cholette,* for defendant.

Butzel, J.  Plaintiff, as sole dependent of Jacob Sutter, deceased, sought compensation under the occupational disease amendment to the workmen's compensation law, Act No. 61, Pub. Acts 1937 (Comp. Laws Supp. 1940, § 8485-1 *et seq.,* Stat. Ann. 1940 Cum. Supp. § 17.220 *et seq.*).  Decedent had worked as a molder in the foundry of the Kalamazoo Stove & Furnace Company, defendant, for approximately 12 years.  The testimony of the doctor who attended him in his last illness and the autopsy showed that he had suffered from a bilateral diffused pneumoconiosis and silicosis and active proliferated tuberculosis with cavitation; that he contracted the disease some eight years prior to his death.  Decedent's fellow-employees had noticed his frequent coughing in 1932 or 1933.  Plaintiff testified that in the two years preceding decedent's death, she had noticed that he was weak, suffered loss of appetite and had pains in his chest and lungs; that theretofore he had been strong and healthy.

Defendant's records showed that decedent first entered its employ on August 10, 1927; that on December 9, 1937, he was laid off and rehired on April 4, 1938, an interval of almost four months; he was again laid off on December 27, 1938, and was not again rehired until October 3, 1939, a period of over nine months.  The laying off of the molders as a rule was due to lack of work.  The employees, however, were free to work for others and were rehired

as occasions arose. In 1928 or 1929, decedent worked for another company in Owosso, Michigan, for two months while defendant was shut down but then returned to the employ of defendant. Both the deputy commissioner and the department on appeal denied plaintiff compensation. The department based its decision on section 5 of the act, No. 61, Pub. Acts 1937 (Comp. Laws Supp. 1940, § 8485-5, Stat. Ann. 1940 Cum. Supp. § 17.224), which reads:

"Neither the employee nor his dependents shall be entitled to compensation for disability or death resulting from such occupational disease, unless such occupational disease is due to the nature of his employment and was contracted therein, or *in a continuous employment* similar to the one in which he was engaged at the time of disablement, within twelve months previous to the date of disablement, whether under one or more employers. The time limit for contraction of the occupational disease prescribed by this section shall not bar compensation in the case of an employee who contracted such occupational disease in the same employment with the same employer by whom he was employed at the time of his disablement and *who had continued in the same employment with the same employer from the time of contracting such occupational disease up to the time of his disablement thereby.*"

The department held:

"The work record showed that he was not continuously employed. That statute expressly limits compensation in cases where a workman has worked for one or more employers within twelve months to diseases contracted within the twelve months. In cases of continued employment, where the disease was contracted in the same employment, he must have continued to work. During the periods of his lay-offs he was free to work elsewhere if he choose

[chose]. He was not an employee of the defendant during those periods."

Plaintiff contends that the use of the words "continuous" and ".continued" in section 5 of the act shows that the legislature meant to give different meanings to the words, and that inasmuch as decedent did not work for any one else during this period he had *continued* in defendant's employ. Appellant claims that any employer who foresaw the faintest indication that an employee might be afflicted with an occupational disease might purposely lay him off so as to avoid payment of compensation, and thus defeat the very purpose of the act. On the other hand, appellee states that if the lay-off or discharge was not bona fide, the court would give the employee relief. He points to a somewhat analogous situation in *Smith* v. *Pontiac Motor Car Co.*, 277 Mich. 652, and contends that the court would hold that it was not a bona fide termination of the contract of hire, but that the employment, as a matter of fact, continued.

It is unnecessary to pass upon this question in the present case inasmuch as compensation must be denied on another ground. Attention is called, however, to the claims of ambiguity so that, if any ambiguity exists, it may be removed if the law is amended.

The testimony leaves no doubt that the room in which decedent was working was continually dusty. The sand used in the molding process was damp, so that the atmosphere was humid, and the air was filled with dust from the powders used by molders. There was no ventilation except from windows; it was difficult to reach and open them, and during the winter months they were usually closed up by being frozen. Another witness stated that the dust was so thick in the foundry room that one could hardly

breathe at times.   Adjoining the foundry room is the mounting room where emery wheel grinders are used at times in order to fit the parts together. There is a door connecting the two rooms.   One witness testified that, while there is quite a bit of dust around or close to the grinding machines, it did not bother one over in the molding room.   In the mounting room, they also used sand blasting to clean the larger castings, while the smaller ones were put in a ''rattler,'' a machine similar to a rotating barrel. The purpose of these machines is to remove the excess sand from the castings and the process has no effect on the metal.   Quite a bit of dust emanates from the sand blast operation and some of it enters the foundry.

Tuberculosis is not compensable under the act. Silicosis is only compensable under section 2 when it is caused by mining.   Pneumoconiosis is the only possible disease for which plaintiff can recover. The department did not make any finding of fact as to what part, if any, pneumoconiosis played in decedent's death.   Pneumoconiosis is compensable under the act when it is caused by ''quarrying, cutting, crushing, grinding or polishing of metal.''   Although the department made no findings of fact, we will assume for the purpose of decision that the chief cause of death was pneumoconiosis which plaintiff claims was contracted by the inhalation of dust occasioned by the grinding of metal.

Plaintiff contends, and the department agreed with her, that the limitation imposed by the words ''caused by'' appearing in the second column of section 2 does not confine recovery to cases where claimant is himself performing the work mentioned as a cause, but that it is sufficient if he is exposed to the disease by being situated contiguously to workmen so engaged.   Even if this is correct, and again

attention is called to the uncertainties in the act, the grinding was done in a different room.

The occupational disease statute is in derogation of common law, and is to receive a strict construction by the courts. It was aptly stated in *Tews* v. *C. F. Hanks Coal Co.*, 267 Mich. 466:

"The compensation act is in derogation of the common law and, therefore, its measure of relief may not be extended beyond its express terms; it is a legislative creation permitting no enlargement by principles of equity or common-law adaptations. It is arbitrary and where it speaks nothing can be added nor changed by judicial pronouncement. It imposes liability upon operatives under its provisions and measures exclusive relief in its own terms."

Section 1 (c) of the act defines "occupational disease" as follows:

"The term 'occupational disease' means a disease which is due to causes and conditions which are characteristic of and peculiar to a particular trade, occupation, process or employment."

Thus, the causes enumerated in the second column of section 2 must be causes which are "characteristic of and peculiar to" claimant's trade. Grinding of metal is not a portion of the trade of molding. In *Lucier* v. *Pansy Hosiery Co., Inc.*, 286 Mich. 585, this court held that a manager of a hosiery shop was not suffering from an occupational disease when disability was caused by the escape of noxious fumes from the furnace. The court said:

"The injuries which plaintiff suffered were not due to assuming a risk inherent in the nature of her employment by defendant company; the risk of injury to health from inhaling noxious fumes is not characteristic of, nor normal, nor constantly pres-

ent in, the occupation of managing a hosiery shop. Such injuries resulted rather, from a fortuitous event which cannot be classified as one of the assumed risks inherent in the particular occupation in question, or as an occupational disease; and her remedy is under the workmen's compensation act.''

See, also, *Dawe* v. *Norge Division of Borg-Warner Corp.*, 286 Mich. 90.

The New York act is very similar to our own. In *Matter of Goldberg* v. *954 Marcy Corp.*, 276 N. Y. 313 (12 N. E. [2d] 311), the New York court explained the restriction imposed by the second column of the New York act (pp. 318, 319):

''Each disease is linked with the process used by the employee by which the disease is caused, such as lead poisoning contracted in a process involving the use of or direct contact with lead. Every such disease is thereby required to be actually caused in the course of the employment and from the particular work the employee is performing. * * * Thus an occupational disease is one which results from the nature of the employment, and by nature is meant, not those conditions brought about by the failure of the employer to furnish a safe place to work, but conditions to which all employees of a class are subject, and which produce the disease as a natural incident of a particular occupation, and attach to that occupation a hazard which distinguishes it from the usual run of occupations and is in excess of the hazard attending employment in general. Thus compensation is restricted to disease resulting from the ordinary and generally recognized risks incident to a particular employment, and usually from working therein over a somewhat extended period. Such disease is not the equivalent of a disease resulting from the general risks and hazards common to every individual regardless of the employment in which he is engaged.''

See, also, *Sokol* v. *Stein Fur Dyeing Co.*, 216 App. Div. 573 (216 N. Y. S. 167). The fact that the second column of the New York act is entitled "Description of Process" while in the Michigan act it is captioned "Caused by" is a distinction of form and not of substance.

Decedent's death in the present case arose from the lack of proper ventilation in the foundry in which he worked. While the legislature has provided for the maintenance of sanitary conditions in foundries (2 Comp. Laws 1929, § 8341 [Stat. Ann. § 17.35]), it has not seen fit to predicate statutory liability thereon under the occupational disease amendment. We must enforce the act as we find it.

Appellant contends that section 3 of the act sets up a cause of action which is independent of the limitations of section 2. The first portion of section 3 reads:

"If any employee is disabled or dies and his disability or death is caused by one of the diseases mentioned in the schedule contained in section two of this part and the disease is due to the nature of the employment in which such employee was engaged and was contracted therein."

Section 3 follows section 2, provides for compensation, and must be read in connection with section 2. The opinion of the department of labor and industry disposes of this contention as follows:

"There is nothing to this contention. Each one of the occupational diseases listed is preceded by the words 'disabilities arising from' then follows a list of the diseases. Opposite each disease and preceded by the words 'caused by' are the occupations, processes, et cetera, by which the disease may be caused. Each listed occupational disease should be read as 'disabilities arising from' pneumoconiosis 'caused by' quarrying, cutting, crushing, grind-

ing or polishing of metal. Only the diseases listed and included within the qualifying words under 'caused by' are compensable. If the legislature had intended to provide compensation for all occupational diseases there would have been no occasion whatsoever for listing them by name and the limitation on the occupational diseases caused by the processes opposite each disease and under the words 'caused by' would be wholly unnecessary.''

We agree with the reasoning of the department and hold that there is no merit in this contention since the act must be read and construed as a whole.

Plaintiff's decedent was not engaged in quarrying, cutting, crushing, grinding or polishing of metal and, therefore, plaintiff may not recover under the act.

The award of the department is affirmed, with costs to defendant.

SHARPE, C. J., and BUSHNELL, BOYLES, CHANDLER, NORTH, MCALLISTER, and WIEST, JJ., concurred.