SMITH *v.* I. STEPHENSON CO.

Master and Servant—Workmen's Compensation Act—Common Laborer—Ability to Earn—Woodsman.

On certiorari to review an order of the industrial accident board denying the petition of the employer and its insurer for the discontinuance of further payments to an injured employee under the workmen's compensation act, on the ground that he was disabled in his employment as a "woodsman," where the evidence shows that at the time of the injury said employee was earning $16 a month and his board as a common laborer in a lumber camp, and at the time of this hearing he was earning an average of over $100 a month as a common laborer in a pulp and paper mill, the order of the board is reversed and the case remanded.

Certiorari to Industrial Accident Board. Submitted October 7, 1920. (Docket No. 36.) Decided December 21, 1920.

John Smith presented his claim for compensation against the I. Stephenson Company for injuries received in defendant's employ. From an order denying a petition for the discontinuance of payments under an award, defendant and the Standard Accident Insurance Company, insurer, bring certiorari. Reversed, and remanded.

*Keena, Lightner, Oxtoby & Hanley,* for appellants.
*S. M. Matthews,* for appellee.

Steere, J. John Smith, above named, suffered injuries in an industrial accident on February 16, 1915, while employed in defendant I. Stephenson Company's lumber camp north of Escanaba helping to load logs. He had been working at that camp 45 days, for about

The question of payments in lump sum to incapacitated employee under workmen's compensation act, is discussed in notes in L. R. A. 1916A, 172, 262; L. R. A. 1917D, 179.

7 days on roads and the rest of the time helping at log loading. He was a native of Finland, over 30 years of age, unmarried, and had been in the United States several years. His wages were $16 per month and his board. The highest pay he testified to ever having received before his injury was $30 per month and board. His account of the accident is: "I was walking up to hand a chain and the logs were rolling from the skidway and I got caught." Though no bones were broken he proved to be badly hurt and was taken on that day to St. Francis Hospital at Escanaba for medical care and attention.

Dr. Kitchen, who was called to attend plaintiff, testified he found him seriously injured internally, his condition at first being so low as to preclude operating for a time, but he rallied from the shock about the second day and obstruction of the bowels being manifest the doctor operated, finding the intestines seriously ruptured and peritonitis. The conditions found rendered necessary that an opening in his side should be maintained for a time with a tube inserted for discharge and drainage, which was kept open until his functions became normal and he was able to be up and around. The doctor testified that plaintiff was under his care about 8 months; that about 3 months after the first major operation he performed a minor operation closing the opening in his side, and there yet remained a bulging area or flat hernia on the right side of his abdomen "known as an incisional hernia" which he advised plaintiff required an operation to cure and offered to perform it. Plaintiff would not, however, consent, stating that he did not want any more operations. The doctor testified his operations proved successful, plaintiff made a good recovery and his physical condition became perfect with the exception that he yet had the incisional hernia, and in witness' opinion he could do any kind of work except such as might require heavy lifting.

Shortly after plaintiff was injured the accident was duly reported by his employer to the industrial accident board, followed by appropriate proceedings under its jurisdiction which resulted, by agreement of parties approved by the board, in an award of compensation to plaintiff at the rate of $4 per week during disability, commencing March 25, 1915. This was paid by defendant for 237 weeks, or over 4½ years, and up to September 1, 1919.

In February, 1918, plaintiff petitioned the accident board for an order requiring of defendants an advance payment of $250 in a lump sum, stating in his petition as reason therefor:

"That he is a single man and no one depending upon him for support; that he has had two operations, but still needs another operation for the purpose of curing the rupture, in order to become completely well; that he is advised by doctors that such operation will cure him, and that he is quite helpless in his present condition; that he has no funds for this purpose, and that an advance lump sum payment would enable him to secure the needed operation, and as he is advised, would be of great service and advantage to him."

Defendants signified their willingness to make such payment in form and amount prayed for in the said petition, and it was so ordered by the board. Plaintiff then went to Rochester, Minnesota, to consult the Mayo Brothers. Of this he was asked and answered as follows:

"You went there for an operation?
"A. Yes.
"Q. About when did you make the trip?
"A. August, 1918.    *    *    *
"Q. Did the Mayo Brothers tell you to have an operation?
"A. Yes.
"Q. You went to Rochester to have an operation, did you not?
"A. I went down to see the Brothers.

"*Q.* Why didn't you have an operation at Rochester?
"*A.* I don't want any more operations."

On December 5, 1919, defendants filed a petition with the industrial accident board for relief from further payment, denial of which is now here for review.

On February 16, 1920, when plaintiff's testimony was taken upon this petition for release from further payment, he testified that he had been working for the Escanaba Pulp & Paper Company since the first of the preceding April, beginning at 30 cents an hour, his wages being later increased to 45 cents an hour; that he first worked at a pulp machine taking away the pulp and putting it on the truck and had also worked at piling pulp on cars, which was the nature of his employment at the time his evidence was taken; that his duties were to pick up the slabs of pulp from where they had been piled and put them on a car, the slabs which he had to lift weighing about 40 pounds. G. F. Germanson, a foreman for the Escanaba Pulp & Paper Company, testified plaintiff had been working under him as a common laborer attending machines at the pulp mill and working on the pulp pile, that he was always able to keep up his end of the work with other men, had been working quite steadily and witness always found him a good man to work. The price per hour and amount of wages paid plaintiff by the Pulp & Paper Company were shown without dispute, and it appeared that between April 1 and December 31, 1919, he had earned a total of $926.73, receiving in the month of April $103.80, in May $127, and so on in varying amounts, his average wages being over $100 per month.

Following the hearing on said petition, on February 16, 1920, the industrial accident board found that plaintiff "was still totally disabled in his employment as a woodsman, as a result of the injuries he sustained

February 16, 1915," denied defendants' petition and ordered weekly payments to be made from September 1, 1919, and continued thereafter "in accordance with the agreement in regard to compensation, and the provisions of the workmen's compensation act."

The board's conception of what constitutes a "woodsman" is not altogether clear, but inferably under the testimony it was used as meaning any one who was working in the woods or employed at a lumber camp. While it might almost be assumed as a matter of common knowledge that most of the men employed at lumber camps are in the fullest sense common laborers, plaintiff's own testimony makes plain his status as a common laborer. He was working in a lumber camp for $16 a month and his board, part of the time on the roads used in connection with the woods operation there and part of the time helping to load logs under a top loader whom he was assisting in putting a wrapper-chain on the load when injured. He had never so far as shown earned over $30 per month and board in any employment. When this petition for relief from further payment was filed he was and had been for several months earning more at unskilled manual labor than he had ever been able to earn before.

This case under the undisputed facts falls within the principles of and is controlled by *Miller* v. *Fair & Sons*, 206 Mich. 360, and the recent case of *Leitz* v. *Labadie Ice Co.*, 211 Mich. 565.

The order of the industrial accident board is reversed and the case remanded for such further proceedings in harmony with this opinion as parties may apply for and the board determine within statutory limitations.

MOORE, C. J., and BROOKE, FELLOWS, STONE, CLARK, BIRD, and SHARPE, JJ., concurred.