MEDACCO v CAMPBELL, WYANT & CANNON FOUNDRY
COMPANY

1. WORKMEN'S COMPENSATION—APPEAL AND ERROR—FINDINGS OF
   FACT—REVIEW.

   Determinations of fact made by the Workmen's Compensation
   Appeal Board, absent fraud, are conclusive, and the task of the
   Court of Appeals is solely one to examine the Board's applica-
   tion of legal standards (Const 1963, art 6, § 28; MCLA 418.861).

2. WORKMEN'S COMPENSATION—EARNING CAPACITY—EVIDENCE—CON-
   TINUED EMPLOYMENT.

   In a workmen's compensation case the employee's capacity to
   earn is not established by the fact that the employee continued
   to work where the employee is injured but not immediately
   disabled, and he keeps on working and a disability slowly
   evolves from the injury; it is the loss of wage earning capacity,
   not actual loss of wages, which is compensable (MCLA 418.371).

3. WORKMEN'S COMPENSATION—EARNING CAPACITY—IMPAIRMENT—
   EVIDENCE—FINDING OF FACT.

   The Workmen's Compensation Appeal Board erred in impliedly
   finding that an employee suffered no impairment of his earning
   capacity in the employment in which he was working at the
   time of an injury solely because the employee continued to
   work in his usual employment as a common laborer after the
   injury, and, where it failed to make a specific finding as to the
   effect of the injury on a claimant's earning capacity other than
   that implicit in the erroneous legal ruling, the case must be
   remanded for factual ascertainments consistent with the appro-
   priate legal standards; review in the Court of Appeals is limited
   to questions of law, and it may not make its own factual
   findings (Const 1963, art 6, § 28; MCLA 418.371, 418.861).

4. WORKMEN'S COMPENSATION—ELIGIBILITY—INTERVENING INJURIES.

   For the purposes of determining the eligibility of an employee for

REFERENCES FOR POINTS IN HEADNOTES
[1] 58 Am Jur, Workmen's Compensation § 530.
[2, 3] 58 Am Jur, Workmen's Compensation § 92.
[4] 58 Am Jur, Workmen's Compensation § 198.

workmen's compensation benefits an intervening, noncompensable, totally disabling injury does not render a prior work-related disability noncompensable.

Appeal from the Workmen's Compensation Appeal Board. Submitted Division 3 April 5, 1973, at Grand Rapids. (Docket No. 14931.) Decided June 28, 1973.

Steven Medacco presented his claim for workmen's compensation against the Campbell, Wyant & Cannon Foundry Company, Division of Textron, Inc., and others. Compensation denied. Plaintiff appealed. Reversed and remanded with instructions.

*McCroskey; Libner, Reamon, Williams, Van Leuven & Klukowski, P. C.,* for plaintiff.

*Smith, Haughey, Rice, Roegge & Gould* (by *Lance R. Mather),* for defendants.

Before: HOLBROOK, P. J., and T. M. BURNS and CHURCHILL,* JJ.

HOLBROOK, P. J. This is an appeal from a decision of the Workmen's Compensation Appeal Board, which reversed a referee's decision granting plaintiff continuing compensation based on a November 23, 1964 hand injury, and denying compensation for alleged work-related back and heart conditions. The opinion of the Workmen's Compensation Appeal Board states in pertinent part the facts of the case:

"After working for defendant for more than 30 years plaintiff became totally disabled on January 21, 1968, by a heart problem. His primary occupation was that of

* Circuit judge, sitting on the Court of Appeals by assignment.

a lift truck driver involving some lifting. At the time of the hearing he was a 56-year old married man with his wife and three children as dependents.

"On October 11, 1968, a Petition for Hearing was filed alleging disability due to a hand injury in November of 1964, a back injury in 1965 and a heart attack on January 21, 1968.

"A hearing was held on October 13, 1969, before Referee Erwin K. Johnson who issued a decision dated September 14, 1970, awarding continuing compensation based on the hand injury of November 23, 1964, and an average weekly wage of $126.62 ordering as follows:

" 'IT IS FURTHER ORDERED that the plaintiff did have an injury 10/29/65 for which compensation has properly been paid. It is further ordered that the employee did not have an injury in the summer of 1965 nor did he have an injury arising out of his employment on 1-21-68.

" 'The fact that the employee has a compensable and a non-compensable disability at the same time, does not mean he cannot draw compensation benefits.'

"Defendant appeals from that decision 'on the grounds that there were no proofs that the claimant was disabled as a result of an industrially related injury, but by a heart attack which was found not to be related to employment.'

"Plaintiff cross-appeals seeking the reversal of the referee's decision urging us to find an injury date of January 21, 1968, when he was disabled from a coronary condition.

"The record contains ample competent proof supporting the referee's finding that plaintiff's heart condition did not arise out of and in the course of his employment. * * *

"Turning to plaintiff's hand problem we note that the trauma he allegedly suffered on November 23, 1964, was not serious enough to require more than the routine taking of x-rays or to cause him any wage loss for he continued his work as a lift driver. *However, plaintiff constantly complained of numbness in his hand and the first aid records substantiate the difficulties he experienced after his 1964 injury.*

"Plaintiff himself testified that the hand problem did not prevent him from working and that the real reason for quitting his job was not his hand or his back but his heart trouble. He further admitted that he did not consult a doctor or treat his hand problem other than to complain at first aid department until after his final disabling heart condition and that he 'worked right along with it,' despite the numbness he felt and the absence of full use of his hand.

*"A careful review of the record leads us to the inescapable conclusion plaintiff's non-compensable heart condition and not his hand problem accounts for his wage loss and that the referee erred in finding that plaintiff is totally disabled as a result of his 1964 hand injury.*

*"However, the medical proofs show that plaintiff's right hand was injured on November 23, 1964, and that whatever difficulties he continued to have with his hand during the intervening years are directly traceable to that traumatic incident.*

"Therefore, the referee's decision shall be modified to find an injury date of November 23, 1964, which did not result in wage loss at this time but may require medical care to which plaintiff is entitled." (Emphasis supplied.)

Plaintiff does not now object to the finding that his back condition and heart condition were not compensable. Essentially three issues are raised on appeal.

I

Does the fact that plaintiff continued working after the hand injury preclude a finding of disability and granting of compensation benefits?

Preliminarily we note that the determinations of fact of the appeal board, absent fraud, are conclusive. MCLA 418.861; MSA 17.237(861); *Lyczynski v Mohawk Lumber & Supply Co,* 33 Mich App 433; 190 NW2d 328 (1971). Our task is solely one to

examine the board's application of legal standards. Const 1963, art 6, § 28. Also, as a prefix to our main discussion, we note the rule that where an employee is injured but not immediately disabled, and keeps on working, and a disability slowly evolves from the injury, the fact that the employee continued to work does not establish his capacity to earn. *Grodzicki v Revere Copper & Brass, Inc,* 268 Mich 143; 255 NW 742 (1934); *Brown v Warren Iron & Metal Co,* 44 Mich App 458; 205 NW2d 276 (1973).

The board decided that the plaintiff's noncompensable heart condition and not his hand injury accounted for the post-January 22, 1968 wage loss and therefore the referee erred in determining that plaintiff was totally disabled as a result of his 1964 hand injury. The rule is that "[I]t is loss of wage earning *capacity*—not actual loss of wages— which is compensable". *Sims v R D Brooks, Inc,* 389 Mich 91, 93; 204 NW2d 139, 140–141 (1973); MCLA 412.11; MSA 17.161 (now MCLA 418.371; MSA 17.237 [371]). The Workmen's Compensation Appeal Board found that plaintiff's wage loss was due to his noncompensable heart condition, but made no specific finding as to the effect of the hand injury on plaintiff's earning *capacity,* other than implying that since there was no apparent wage loss until the heart attack, there could be no compensable disability from the hand injury. The board's legal reasoning was erroneous. It apparently felt that because there was no wage loss there was no "impairment of his earning capacity in the employment in which he was working at the time of the injury". MCLA 412.11; MSA 17.161. While an actual wage earning differential may be considered evidence of capacity, it cannot alone be considered determinative. For were it otherwise, if an employee somehow adjusted and

mitigated the effect of an injury to continue working at his full pre-injury performance level, he would be punished by a denial of compensation for his injury since he had suffered no wage loss. In short, by the reasoning of the appeal board, an injured worker who quits his job or seeks easier work at less pay from his employer could get compensation, but a stalwart employee who adjusts to the injury and stays on his job is left without a remedy for his condition. We cannot see how such reasoning would be consistent with the policy objective behind the wage-earning capacity proviso of MCLA 412.11; MSA 17.161. "The proviso was adopted to relieve the employer of the payment of compensation pro tanto, *if and while the employee has capacity to earn* sufficient wages in the same or another occupation." (Emphasis supplied.) *Markey v SS Peter & Paul's Parish,* 281 Mich 292, 298; 274 NW 797, 800 (1937). Medacco seeks compensation for an injury of a character, according to the referee, that is totally disabling. His post-injury earnings do not necessarily determine the fact of his disability.

We see nothing contrary to our conclusion in the cases. In *Hirschkorn v Fiege Desk Co,* 184 Mich 239; 150 NW 851 (1915); *Kaarto v Calumet & Hecla, Inc,* 367 Mich 128; 116 NW2d 225 (1962); and *Pulley v Detroit Engineering & Machine Co,* 378 Mich 418; 145 NW2d 40 (1966), the Supreme Court held that since the injured employee returned to work that was identical to his old job or to a regularly recognized occupation at wages equal to or greater than that paid to the employee prior to the injury, the employee had established a post-injury wage-earning capacity equal to or greater than the pre-injury capacity, such that it justified a denial of compensation benefits for the

injury under MCLA 412.11; MSA 17.161. On their face these cases could be argued in support of defendants' claim and the ruling of the Workmen's Compensation Appeal Board. However, to the extent that the cases can be read to pivot on the fact of an actual loss of wages rather than wage-earning capacity as determinative of the *right* to compensation, it would seem they are contrary to the recent pronouncement that wage-earning capacity is the key focal point of analysis. *Sims, supra.*

A closer examination of these cases also demonstrates that they are not necessarily inconsistent with the result we reach here. (For a contrary conclusion see 2 Larson's Workmen's Compensation Law, § 57.22, pp 29–55.) In *Pulley* the Court stated at p 423:

"Presumably and actually, an employee can be injured, disabled to a degree, and yet suffer no weekly wage loss because he is shown to be able to earn an amount equal to or greater than that which he was earning at the time of his injury. In many instances from the highest motives of desire to rehabilitate the employee and restore him as a wage-earning member of society, some employers have retained injured employees in new jobs within their capacity to perform. It is not difficult to perceive, however, that an ill-intentioned employer desirous of avoiding compensation payments could rehire an injured and disabled employee, establish his capacity to earn as much or more than before his injury and terminate his employment. Then, if the bare elements of proof of what the employee was paid were construed as establishing his 'earning capacity' the whole purpose of the act would be vitiated.

"Thus, the method of determining the employee's earning capacity, as that term is used in the act is a *complex of fact issues* which are concerned with the nature of the work performed and the continuing availability of work of that kind, and the nature and extent of the disability and the wages earned. This determina-

tion by legislative enactment is reposed in the workmen's compensation department." (Emphasis supplied.)

The Court further stated that if wages actually earned were the test of wage-earning capacity impairment, the test as stated would encourage malingering. Quoting from *Markey v SS Peter & Paul's Parish,* 281 Mich 292, 299–300; 274 NW 797, 800 (1937), the Court added, at p 425:

> " 'When an employee accepts work and receives wages therefor in a recognized regular employment, with the ordinary conditions of permanency, as here, there is no room for argument that he has not thereby established a present earning capacity equal to such wages, whatever may be his physical condition.'
>
> "Thus *while appellant was so employed* and his wages were equal to or greater than those received at the time of his injury, which is not disputed, *he was not entitled to compensation benefits."* (Emphasis supplied.)

In *Pulley* the Court affirmed a denial of compensation benefits to an employee who had, after the amputation of his left hand in a punch press accident, accepted clerical work with his employer at an equal or greater salary, only to quit later after becoming dissatisfied with his new position. He later applied for compensation but, unlike the situation of Medacco here, he did not introduce adequate proof of his actual earning capacity after his employment ceased. In contrast, Medacco, who did *not* voluntarily quit his job, did submit a great deal of medical testimony to the effect that his hand at the time of the hearing was completely useless for physical labor, and that the hand condition had been progressively worsening.

*Kaarto, supra,* at p 132, is also consistent, since there an injured *skilled* miner was denied compen-

sation because he could continue after the injury to work as a skilled miner while:

"Had plaintiff been engaged in common labor at the time of injury, he would be entitled to compensation benefits because his injuries prevent him from doing some common labor. *Miller v S Fair & Sons,* 206 Mich 360; 171 NW 380 (1919); *Smith v I Stephenson Co,* 212 Mich 154; 180 NW 384 (1920); and *Wieland v Dow Chemical Co,* 334 Mich 427; 54 NW2d 708 (1952). However, because he would be able to perform his skilled mining work but for the economic conditions which closed the mine, he is barred by the statute from receiving compensation for his impaired earning capacity as a common laborer."

Plaintiff Medacco drove a forklift truck, and certainly this is in the field of common labor, the apparent distinguishing factor for the Court in *Kaarto.* It is noteworthy that the result reached in *Hirschkorn, supra,* where an employee was denied compensation for an eye injury when he returned to his old job at equal pay as a machine operator, might very well not be reached under *Kaarto's* thesis that skilled and common labor need be distinguished in judging earning capacity. The *Kaarto* ruling was expressly adopted in *Adair v Metropolitan Bldg Co,* 38 Mich App 393; 196 NW2d 335 (1972), where an employee was disabled from performing general unskilled labor and granted compensation, even though he was probably able to perform the duties of his old job as a building superintendent. *Cf. Leitz v Labadie Ice Co,* 211 Mich 565; 179 NW 291 (1920).

Defendants alleged authority for the assertion that disability means wage loss comes from two sources. They first assert that MCLA 418.401; MSA 17.237(401) specifically defines disability as: "[T]he state of being disabled from earning full

wages at the work in which the employee was last subject to the conditions resulting in disability". We do not take this definition to mean that "*capacity* to earn wages" is not the focal point of analysis. Second, defendants cite *Hutsko v Chrysler Corp,* 381 Mich 99, 102; 158 NW2d 874, 876 (1968), as authority for their position. However, the quotation cited by defendants from *Hutsko* concerned how *benefits* payable to an injured employee were to be determined from the differential in wage earnings for work done before and after the injury, not how the disability, if any, was established. Like the Workmen's Compensation Appeal Board, defendants confuse two separable issues: (1) has a disability resulted from the employee's injury, as determined by looking at the employee's capacities to earn before and after the injury; (2) if there is a disability, what benefits should be paid, as determined by looking at wage differentials before and after the injury. While any wage differential is the key to a determination of issue 2, it is only one factor or one piece of evidence to be considered in determining wage-earning capacity under issue 1. *Pulley, supra.*

Since we decide that the Workmen's Compensation Appeal Board applied the wrong legal standard in determining the correctness of the hearing referee's factual findings, this case must be remanded so that factual ascertainments can be made consistent with the appropriate legal standards discussed above. On remand, of course, if the appeal board should decide that the plaintiff's hand injury was not totally disabling as of the date of the heart attack, but became totally disabling at a subsequent time, it may award continuing compensation benefits after that date.

## II

Does an intervening, noncompensable, totally

disabling heart condition render a prior work-related disability noncompensable?

The plaintiff raises this issue under the view that the Workmen's Compensation Appeal Board opinion actually held that the intervening noncompensable heart condition rendered the prior work-related hand injury noncompensable. This view is apparently based on that portion of the appeal board's opinion that reads: "A careful review of the record leads us to the inescapable conclusion plaintiff's noncompensable heart condition and not his hand problem accounts for his wage loss and that the referee erred in finding that plaintiff is totally disabled as a result of his 1964 hand injury". Assuming that the appeal board meant to hold that an intervening, noncompensable, totally disabling heart condition renders a prior work-related disability noncompensable, we must disagree with the appeal board's conclusion.

As aforesaid, an employee may continue to work after an injury occurs which does not immediately disable him and still claim compensation when the disability arises. *Grodzicki, supra; Brown, supra.* Defendants seek to distinguish the cases plaintiff cites by asserting that these cases involved situations wherein the right to receive compensation had been adjudicated and fixed *before* the claimant's employment ceased because of a noncompensable injury, a factual element not present in plaintiff's case here. However, the element was also not present in *Sims, supra,* and yet the Supreme Court still affirmed the continuing grant of compensation payments to the claimant, even though he could no longer work because of his incarceration. Moreover, in *Sims* the hearing on Sims' claim was not requested or held until *after* Sims could no longer

work, like the situation here. See also, *Cundiff v Chrysler Corp,* 293 Mich 404; 292 NW 348 (1940); *Sotomayor v Ford Motor Co,* 300 Mich 107; 1 NW2d 472 (1942). In light of *Sims* we do not deem defendants' attempts to distinguish plaintiff's authorities or substitute its own countervailing authorities to be successful. Moreover, we believe our conclusion is substantiated by the policy reasons behind the workmen's compensation act. Certainly a claimant should not be denied benefits for a totally disabling injury because he perchance files his claim coincidentally with or after the occurrence of a totally disabling noncompensable injury. By defendants' and the appeal board's view, had Medacco suffered amputation of his arm because of a work-related accident he still could not claim compensation if he continued to work and a short time later he suffered a completely debilitating, but noncompensable, heart attack. The Legislature could hardly have meant to structure the Workmen's Compensation Act to reach such a result, while at the same time encouraging employees to continue to work if able to after being injured without jeopardizing their right to later compensation.

### III

May the plaintiff raise on remand to the Workmen's Compensation Appeal Board the argument that he suffered the loss of the industrial use of his hand, and should be compensated for the loss?

Despite the fact that plaintiff claimed loss of the industrial use of his right hand in his initial petition for a hearing of his claim, the hearing referee did not make a finding with reference to plaintiff's specific loss. No reason was given for the failure to deal with the issue. The Workmen's

Compensation Appeal Board also did not deal with the issue, apparently believing any loss of the plaintiff arose because of the noncompensable heart condition. Plaintiff now requests this Court to deal with the evidence presented below and decide whether his specific loss claim is justified. However, our review here is limited to questions of law, and we may not make our own factual findings. Const 1963, art 6, § 28; MCLA 418.861; MSA 17.237(861); *Neagle v State Library,* 6 Mich App 148; 148 NW2d 507 (1967). Furthermore, where the issue is not put before the Workmen's Compensation Appeal Board, this Court will not consider it on appeal. *Turner v Consumers Power Co,* 376 Mich 188; 136 NW2d 1 (1965). Since it is not apparent from the record below how the issue was decided, a remand for an appropriate finding by the appeal board is necessary on this issue also. *Johnson v Cleveland-Cliffs Iron Co,* 356 Mich 387; 96 NW2d 750 (1959).

Reversed and remanded for proceedings consistent with this opinion.

All concurred.