MOORE v GUNDELFINGER

1. WORKMEN'S COMPENSATION—APPEAL AND ERROR—FINDINGS OF FACT—CONCLUSIONS.

Findings of fact made by the Workmen's Compensation Appeal Board are conclusive in the absence of fraud (Const 1963, art 6, § 28; MCLA 418.861).

2. WORKMEN'S COMPENSATION—APPEAL AND ERROR—APPLICATION OF LEGAL STANDARDS—SCOPE OF REVIEW.

The task of the Court of Appeals is to examine the Workmen's Compensation Appeal Board's application of legal standards (MCLA 418.861).

3. WORKMEN'S COMPENSATION—APPEAL AND ERROR—EVIDENCE—SUFFICIENCY OF EVIDENCE.

The Court of Appeals must affirm a decision of the Workmen's Compensation Appeal Board if there is any evidence in the record to support its findings; the courts of this state are not triers of fact in workmen's compensation cases, but rather review findings to determine whether there is evidence to support the giving or denial of an award.

4. WORKMEN'S COMPENSATION—APPEAL AND ERROR—FINDINGS—BASIS FOR REVIEW.

The Workmen's Compensation Appeal Board must indicate the testimony adopted, the standards followed, and the reasoning used in reaching its conclusion, in order for the courts of this state to properly review workmen's compensation cases.

5. WORKMEN'S COMPENSATION—COMPENSABLE INJURY—SCOPE OF EMPLOYMENT—TRYOUT.

An injury is compensable as a matter of law when it is incurred by an individual engaged in a tryout for the employer.

REFERENCES FOR POINTS IN HEADNOTES

[1, 4, 6] 58 Am Jur, Workmen's Compensation §§ 463, 529, 530.
[2] 58 Am Jur, Workmen's Compensation § 530.
[3] 58 Am Jur, Workmen's Compensation § 532.
[5] 58 Am Jur, Workmen's Compensation § 192 *et seq.*

6. Workmen's Compensation—Appeal and Error—Findings—Scope
   of Employment—Tryout.

> Whether a plaintiff's trip in a defendant's automobile to and from
> defendants' shop was part of a tryout arrangement for the
> employer, and thus compensable, must be determined by the
> Workmen's Compensation Appeal Board as a finding of fact
> where the plaintiff was injured in an accident while returning
> home from a tryout period in the automobile of her prospective
> employer.

Appeal from Workmen's Compensation Appeal Board. Submitted Division 3 June 4, 1974, at Grand Rapids. (Docket No. 18092.) Decided October 9, 1974.

Claim by Betty Moore against Jan Gundelfinger and W. T. Gundelfinger, a partnership, and Continental Casualty Company for workmen's compensation. Compensation denied. The Workmen's Compensation Appeal Board affirmed the referee's decision. Plaintiff appeals by leave granted. Reversed and remanded.

*Patrick & Johnson, P. C.,* for plaintiff.

*Cholette, Perkins & Buchanan* (by *Edward D. Wells),* for defendants.

Before: Holbrook, P. J., and T. M. Burns and R. L. Smith,* JJ.

Holbrook, P. J. This case arises as an appeal from determination of the Workmen's Compensation Appeal Board[1] which upheld a decision of a compensation referee denying benefits to plaintiff.

In early 1970 plaintiff Betty Moore, who had recently finished a beautician's course in Petoskey,

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

[1] Hereinafter referred to as the WCAB.

Michigan, was contacted, at her home in Levering, Michigan, by defendant Jan Gundelfinger concerning possible employment with Gundel's Hairdressers (a partnership of defendant Jan Gundelfinger and her husband defendant W. T. Gundelfinger) in Battle Creek, Michigan. Plaintiff went to Harbor Springs, Michigan, where she demonstrated her skills by working on Mrs. Gundelfinger's hair. After having completed this step, a trip to defendants' shop in Battle Creek was necessary to determine if the employment of plaintiff would be harmonious with the manager of the shop and the employees.

On February 1, 1970, the two left for Battle Creek in a car owned and driven by Jan Gundelfinger. Plaintiff had been informed that all costs of the trip would be borne by Jan Gundelfinger. On February 2, plaintiff was shown the defendants' shop. On the 3rd and 4th, plaintiff again demonstrated her skills by working on the hair of one of defendants' employees. Thereafter, plaintiff was told that should she so desire she could start work the following week. To this plaintiff agreed.

Returning north, the ladies were involved in an automobile accident on Michigan highway M-66 in Ionia County. Jan Gundelfinger was driving. Plaintiff suffered head injuries and a fractured patella. On the next day (February 6) plaintiff was taken by her father from the Ionia Hospital to the Little Traverse Hospital in Petoskey. Plaintiff underwent knee surgery.

Plaintiff did not return to work until August 1, 1970, when she worked in a part-time position as a cashier in a restaurant. On September 1, 1970, plaintiff began working full time at a beauty shop in Mackinaw City.

Later in September, plaintiff by her father as

next friend filed suit against defendants for damages. On October 19, 1970, defendant Jan Gundelfinger filed an employer's basic report of injury with the Workmen's Compensation Bureau. Plaintiff filed a petition therein for hearing dated December 11, 1970. On December 2, 1971, a hearing was held on the petition of plaintiff. Prior thereto the civil suit was settled for $4,000. On November 30, 1971, a release was signed which specifically excluded release from any claim for workmen's compensation benefits. By decision signed December 2, 1971, the referee denied plaintiff's petition. Plaintiff appealed from this ruling and on August 3, 1973, the referee's denial of benefits was affirmed by the WCAB. After briefly stating the facts of the case, the WCAB found:

"Within a year plaintiff initiated both a guest passenger liability suit against defendants and a workmen's compensation claim against defendant partnership's compensation carrier.

"Her legal pleadings throughout the circuit court action specifically denied any employer-employee relationship. Upon settlement of that claim for $4,000.00, the workmen's compensation case was brought up for hearing—now with the claim of employment status. The Hearing Referee denied same with plaintiff bringing this appeal.

"Specifically excluding the above-referred-to prior litigation, we find the Referee's decision supportable on the facts of this case. Plaintiff was never employed or paid wages. She had agreed to employment with that employment to commence five days *after* the accident. She had not even taken such preliminary steps as completion of Social Security information. Cases cited by plaintiff center around highway risks or non-work-location injuries arising out of employment already established. Here employment was contemplated, not consumated *[sic]*. It would be difficult for this Board to find an auto accident involving a beautician on her way home as compensable. How much more difficult when

that beautician hasn't even entered into an employment situation." (Emphasis in original.)

I

As is often the case, one party, here the defendants, confronts this Court with one basic assertion, *viz.,* that the determination of the appeal board was one of fact and that, in the absence of fraud, that finding is conclusive. Const 1963, art 6, § 28 states that findings of fact made by the WCAB are conclusive in the absence of fraud. MCLA 418.861; MSA 17.237(861) provides:

"The findings of fact made by the board acting within its powers, in the absence of fraud, shall be conclusive. The court of appeals and the supreme court shall have power to review questions of law involved in any final order of the board, if application is made by the aggrieved party within 30 days after such order by any method permissible under the rules of the courts of the laws of this state."

It is apparent that the Legislature never manifested any intention that this Court should not review any and all legal determinations of the WCAB. In the past, this writer has pointed out that the task of this Court is to examine the board's application of legal standards. *Medacco v Campbell, Wyant & Cannon Foundry Co,* 48 Mich App 217, 220–221; 210 NW2d 360, 363 (1973).

The courts of this state are not triers of fact in workmen's compensation cases, but rather review findings to determine whether there is evidence to support the giving or denial of an award. *Carter v Kelsey-Hayes Co,* 386 Mich 610, 615; 194 NW2d 326, 328 (1972). This Court must affirm if there is any evidence in the record to support the findings. *Lamb v John's Tavern,* 37 Mich App 678, 681; 195

NW2d 278, 279 (1972). However, in order to properly review these cases, the appeal board must indicate the testimony adopted, the standard followed, and the reasoning used in reaching its conclusion. *McClary v Wagoner,* 16 Mich App 326, 328; 167 NW2d 800, 801 (1969); *Lamb v John's Tavern, supra.* In reference to this, Justice O'HARA has recently written:

"[A]n administrative tribunal clothed with the awesome power to award or deny benefits in finality on facts found absent fraud should make those findings clear and unequivocal. Whenever possible transcript references should be made to the testimony it accepts or rejects. By so doing it will insure the effectuation of the legislative intent of severely limiting judicial review." *Couch v Saginaw Malleable Iron Plant, Central Foundry Div of GMC,* 51 Mich App 317, 321–322; 214 NW2d 885, 887–888 (1974).

We are unable to say under the circumstances present herein that the opinion is clear and unequivocal. The only testimony was that of plaintiff, so reference to the testimony accepted or rejected was unnecessary. While no standard is explicitly set out, it appears that the WCAB, having found as a matter of fact that no employment relationship existed, concluded that the injury was not compensable as a matter of law. As will appear herein, the legal standard of a no-employment relationship is not controlling and is inapplicable. The facts in this case raise an issue of first impression in this jurisdiction.

## II

The novel question is whether a tryout period is so covered as to fall within the confines of the workmen's compensation law if an injury should occur during that period.

Professor Larson has written:

"Since workmen's compensation law is primarily interested in the question when the risks of the employment begin to operate, it is appropriate, quite apart from the strict contract situation, to hold that an injury during a try-out period is covered, *when that injury flows directly from employment activities or conditions.*

\* \* \*

"If all the facts are present which would justify the conclusion that a trip or activity prior to formal hiring was sufficiently connected with the employment to support compensability, this conclusion should not be retroactively undone if the case happens to present evidence that the hiring for some reason would not have taken place." (Emphasis supplied.) 1 Larson's Workmen's Compensation Law, § 26.20, pp 5–202, 5–203.

In *Smith v Venezian Lamp Co,* 5 AD2d 12; 168 NYS2d 764 (1957), an individual claiming workmen's compensation benefits had sought a job as a polisher with the defendant manufacturer of lamps. The man in charge of the company's polishing operations told claimant that he would "try him out". The claimant was given part of a lamp to polish which he attempted to do with a buffing machine. The lamp slipped off the spool upon which it was placed, struck, and caused injuries to the claimant. The New York Court wrote at 5 AD2d 14; 168 NYS2d 766: "A tryout is for the benefit of the employer, as well as the applicant, and if it involves a hazardous job we see no valid reason why the applicant should not be entitled to the protection of the statute".[2]

---

[2] *Cf. Sones v Thompson Furniture Co,* 163 Pa Super 392; 62 A2d 116 (1948), where an individual had been hired under a contract of employment which left open the factor of rate of compensation for future determination. When injury caused the loss of the use of three fingers of the claimant's right hand, benefits were awarded.

Also involving the question of whether injuries occurring during a tryout period are compensable is the case of *Laeng v Workmen's Compensation Appeals Board,* 6 Cal 3d 771; 494 P2d 1; 100 Cal Rptr 377 (1972). While participating in an obstacle course, as a phase of a physical agility test, the petitioner Laeng fell from a raised horizontal telephone pole and fractured his right foot. The workmen's compensation referee found that the complainant was precluded from workmen's compensation recovery because, at the time of the injury, he had not become an employee of the respondent City of Covina, California. The California Supreme Court, speaking through Mr. Justice Tobriner, cited the *Smith* case in support of its conclusion, saying that any tryout which requires "the performance of special skills" is for the benefit of the employer as well as the applicant. 6 Cal 3d 781; 494 P2d 7; 100 Cal Rptr 383. The Court went on to say that a tryout is also in the service of the employer in another sense as the applicant subjects himself to the employer's control,[3] and the employer, in turn, assumes responsibility for directing the applicant's activities. The Court held that the injury was compensable as a matter of law. The Court said:

"Workmen's compensation, of course, fundamentally proposes to protect individuals from any 'special risks' of employment; thus when an employer, as part of a

---

The case of *Smith v Venezian Lamp Co,* 5 AD2d 12; 168 NYS2d 764 (1957), was followed by the New York Court in *Bode v O & W Restaurant,* 9 AD2d 969; 193 NYS2d 845 (1959). In that case a common law action had no impact upon their decision.

[3] Control, under the so-called "economic reality" test, is a factor in determining whether an employer-employee relationship exists. The others are: payment of wages; the right to hire and fire; and, the right to discipline. *Cronk v Chevrolet Local 659,* 32 Mich App 394, 399; 189 NW2d 16, 18–19 (1971). See also *McKissic v Bodine,* 42 Mich App 203; 201 NW2d 333 (1972).

'tryout' for an employment position, exposes an appli-
cant under his control and direction to such risks, any
resulting injury becomes properly compensable under
the workmen's compensation law." 6 Cal 3d 774; 494
P2d 2; 100 Cal Rptr 378 (1972).

Had the injury here in question occurred during
the period when the plaintiff was actually involved
in demonstrating and performing her skills under
the tryout, or while on defendants' premises, or
while doing specific duties for defendants, we
would not hesitate to find that any such injury
was compensable. However, as the injury occurred
in transit returning from the tryout, inquiry must
continue.

## III

Whether an individual injured in an accident
while returning home in the automobile of her
prospective employer from a tryout period is eligi-
ble for compensation under the workmen's com-
pensation law?

It is agreed that Mrs. Gundelfinger travelled
from her home in Harbor Springs to the shop in
Battle Creek weekly. The only testimony available,
that of the plaintiff, is unclear. She testified:

*"Q. (By Mr. Patrick, plaintiff's attorney):* Did you
have any discussions concerning transportation for that
trip?

*"A.* Yes. She said that she would furnish the trans-
portation and pay for everything all the time we were
down there.[4]

\*   \*   \*

*"Q. (By Mr. Wood, defendants' attorney):* There was
really no requirement imposed upon you by Jan Gun-

---

[4] It is not disputed that Mrs. Gundelfinger furnished or paid for all
expenses of plaintiff's transportation, food and lodging.

delfinger which said, 'Betty, you must travel with me to Battle Creek to look over the situation,' was there?

"*A.* No.

"*Q.* You could have gone on the bus if you had wanted to, assuming you would have had funds available to pay for the bus ride?

"*A.* Yes, I could have.

"*Q.* And if you would have had a car of your own, you could just as easily driven that down; true?

"*A.* Yes.

"*Q.* So at no time did she say, 'Betty, you must come with me in my car to work on this thing,' did she?

"*A.* No.

\* \* \*

"*Q. (By Mr. Patrick):* Would you have gone down to Battle Creek with Mrs. Gundelfinger had she not provided the transportation for it?

"*A.* No."

It is ordinarily the general rule that injuries incurred by an employee while going to or from work are not regarded as arising out of and in the course of employment so as to qualify under the provisions of workmen's compensation. See *Phillips v Fitzhugh Motor Co,* 330 Mich 183; 46 NW2d 922 (1951); *Fischer v Lincoln Tool & Die Co,* 37 Mich App 198, 201; 194 NW2d 476, 478 (1971), and cases cited therein. Certain exceptions to this rule are to be found, as where an individual is engaged in a special mission in the interest of and at the direction of his employer. *Le Vasseur v Allen Electric Co,* 338 Mich 121, 123; 61 NW2d 93, 94 (1953). *Cf. Levchuk v Krug Cement Products Co,* 246 Mich 589; 225 NW 559 (1929); *Funk v A F Scheppmann & Son Construction Co,* 294 Minn 483; 199 NW2d 791 (1972); and *Phoenix Indemnity Co v Willard,* 130 F Supp 657 (SDNY, 1955).

We rule that when an individual is injured while engaged in a tryout for the employer, such

injury is compensable as a matter of law. The finding of a no-employment relationship by the WCAB in view of our ruling herein is not controlling. We are unable to pass upon this case without more complete findings. The WCAB has not determined whether the trip benefited the defendants and whether plaintiff's trip in defendant's automobile to and from Battle Creek was a part of the tryout arrangement, *i.e.,* inherently connected with the tryout so as to be part thereof, and thus compensable. The case is remanded to the WCAB for further findings in accord with this opinion, and to certify such to this Court within 60 days. Costs to abide final results.

All concurred.