## WARD v DETROIT BOARD OF EDUCATION

OPINION OF THE COURT

1. WORKMEN'S COMPENSATION—WORKMEN'S COMPENSATION APPEAL BOARD—FINDINGS OF FACT—CONCLUSIONS OF LAW.

   The Court of Appeals must recognize findings of fact made by the Workmen's Compensation Appeal Board in the absence of fraud, but will review the decision of the board to determine whether the legal conclusions drawn from those facts were justified.

2. WORKMEN'S COMPENSATION—DISABILITY—IMPAIRMENT OF WAGE-EARNING CAPACITY.

   The test used to determine disability in workmen's compensation depends not upon industrial injury and consequent disability alone, but upon proof of impairment to wage-earning capacity.

3. WORKMEN'S COMPENSATION—WAGE-EARNING CAPACITY—QUESTION OF FACT.

   Determination of an injured worker's subsequent wage-earning capacity is an issue of fact to be resolved by the workmen's compensation department.

4. WORKMEN'S COMPENSATION—STATUTES—WAGE-EARNING CAPACITY.

   "Wage-earning capacity" as used in the Workmen's Compensation Act is the capacity of an injured workman to earn sufficient wages in the same or another occupation, whether or not he works (MCLA 418.371; MSA 17.237[371]).

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 2 Am Jur 2d, Administrative Law § 610 et seq.

[2–6] 82 Am Jur 2d, Workmen's Compensation § 347 et seq.

[5, 6] 82 Am Jur 2d, Workmen's Compensation § 565.

Necessity, form, and contents of findings of fact to support administrative determinations relating to workmen's compensation. 146 ALR 123.

Workmen's compensation: right to compensation as affected by fact that injured employee earns, or is offered, as much as, or more than, before the injury. 149 ALR 413.

5. WORKMEN'S COMPENSATION—WORKMEN'S COMPENSATION APPEAL
BOARD—EVIDENCE—SUPPORT FOR DETERMINATION.

Sufficient evidence was presented to the Workmen's Compensation Appeal Board to support a determination that an injured employee's wage-earning capacity was not impaired at the time he terminated employment and that he had not proved continuing disability from the injury where there was conflicting medical testimony, and where the employee was concurrently employed at two full-time positions for eight months after the injury.

DISSENT BY BRONSON, J.

6. WORKMEN'S COMPENSATION—COMPENSABLE DISABILITY—WAGE-EARNING CAPACITY—REMAND.

*A determination by the Workmen's Compensation Appeal Board that a claimant was not entitled to compensation is erroneous where it appears that the board found no compensable disability because the claimant suffered no apparent wage loss; the relevant inquiry is whether the claimant suffered a loss of wage-earning capacity as a result of the injury, and where the board made no specific finding as to the effect of the claimant's injury on his earning capacity, the case should be remanded for further findings on the issue.*

Appeal from Workmen's Compensation Appeal Board. Submitted October 6, 1976, at Detroit. (Docket No. 26405.) Decided December 2, 1976. In lieu of grant of leave to appeal, remanded to Workmen's Compensation Appeal Board.

Claim by William O. Ward against the Detroit Board of Education for workmen's compensation. Benefits denied. The Workmen's Compensation Appeal Board affirmed with modification. Plaintiff appeals. Affirmed.

*Marston, Sachs, Nunn, Kates, Kadushin & O'Hare, P. C., for plaintiff.*

*LeVasseur, Werner, Mitsoff & Brown* (by *Lawrence D. Egan),* for defendant.

Before: V. J. Brennan, P. J., and Bronson and Bashara, JJ.

V. J. Brennan, P. J. Plaintiff William Ward appeals a ruling by the Workmen's Compensation Appeal Board denying him benefits. This ruling affirmed the corrected findings of Administrative Law Judge Frank Condino that "in spite of sustaining an injury * * * plaintiff did not suffer any wage loss as a result thereof and * * * [so] has failed to sustain the burden of proof that he is still disabled as a result of the said injuries". The appeal board did modify Judge Condino's ruling to the extent that they ordered defendant Detroit Board of Education to pay for medical expenses incurred as a result of plaintiff's injury.

The facts in this case are not particularly complicated. Plaintiff began part-time work with defendant as an emergency food service helper in February, 1970. His duties included washing pots and pans, sweeping and mopping. He was concurrently employed full time with Parke-Davis Company, a position he had held since March, 1969. On April 6, 1970, the injury upon which the claim is based occurred when a rack of frozen food fell on plaintiff. He was taken to Harper Hospital emergency room but lost no work time as a result of the injury. In November, 1970, plaintiff began full-time employment with defendant as an assistant custodian while maintaining his full-time employment with Parke-Davis. He testified that his continuing back problems prompted him to seek the custodial position which he felt required less bending.

In late November, 1970, plaintiff was called in by his supervisor, Robert Johnson, because he was not arriving at and leaving the job on time. In early December, a second such conference occurred

for the same reason. Finally, on December 29, 1970, a formal personnel meeting was held, at which time plaintiff was given the choice of resigning or being fired. He resigned. Plaintiff believed his refusal to shovel snow because of his back problem was responsible for the termination, though the need to attempt such work never arose.

Plaintiff continued to work full time with Parke-Davis. On April 5, 1971, plaintiff filed a petition for hearing with the Workmen's Compensation Bureau. Later that month, plaintiff was hospitalized for two weeks because of his back problems and hypertension. In September, 1971, plaintiff was laid off from Parke-Davis, but returned to work in November, 1971. He worked for a month at the Parke-Davis distribution center in Allen Park, operating lift equipment and doing "whatever they had for me to do". Subsequently, he was employed as a "granulator finisher", blending medicines, before being reassigned shortly afterward to a position filling drug orders. In March, 1972, plaintiff entered Boulevard General Hospital for diagnosis and treatment. A myelogram taken at that time was negative.

On appeal, the only question we find necessary to discuss at length is whether any legal error appears in the Workmen's Compensation Appeal Board ruling that plaintiff was not disabled within the meaning of the Workmen's Compensation Act.

In the absence of fraud, this Court is bound to recognize findings of fact made by the Workmen's Compensation Appeal Board. Const 1963, art 6, § 28. See MCLA 418.861; MSA 17.237(861). See also *Moore v Gundelfinger,* 56 Mich App 73, 77; 223 NW2d 643 (1974). However, we do review the decision below to determine whether the legal conclusions drawn from these facts were justified.

*Deziel v Difco Laboratories, Inc,* 394 Mich 466, 475; 232 NW2d 146 (1975). On review of the appeal board ruling in this case, we believe no legal error occurred in finding that plaintiff failed to sustain the burden of showing a work related disability.

The test used to determine disability in Michigan depends not upon industrial injury and consequent disability alone, but upon proof of impairment to wage-earning capacity. MCLA 418.371; MSA 17.237(371). See *Hansel v Chrysler Corp,* 58 Mich App 173, 176; 227 NW2d 276 (1975), *Miller v Midwest Foundry Corp,* 57 Mich App 761, 768; 226 NW2d 721 (1975), *Medacco v Campbell, Wyant & Cannon Foundry Co,* 48 Mich App 217, 221; 210 NW2d 360 (1973), *Sims v R D Brooks, Inc,* 389 Mich 91, 93; 204 NW2d 139 (1973).

The Michigan Supreme Court has characterized the determination of what a worker is "able" to earn subsequent to an industrial injury and disability—that is, his wage earning capacity, as an issue of fact. *Pulley v Detroit Engineering & Machine Co,* 378 Mich 418, 423; 145 NW2d 40 (1966):

"Thus, the method of determining the employee's earning capacity, as that term is used in the act, is a complex of fact issues which are concerned with the nature of the work performed and the continuing availability of work of that kind, and the nature and extent of the disability and the wages earned. This determination by legislative enactment is reposed in the workmen's compensation department.

On the other hand, what wage-earning capacity means under the Workmen's Compensation Act is a legal matter left to the courts. The Supreme Court has interpreted the statute in the following terms:

"This leads us to the construction of the words 'wage-earning capacity' in the proviso. The proviso was adopted to relieve the employer of the payment of compensation *pro tanto,* if and while the employee has capacity to earn sufficient wages in the same or another occupation, *MacDonald v Great Lakes Steel Corp,* 268 Mich 591 [256 NW 558 (1934)], whether or not he works, *Hood v Wyandotte Oil & Fat Co,* [272 Mich 190; 261 NW 295 (1935)]." *Markey v SS Peter & Paul's Parish,* 281 Mich 292, 298; 274 NW 797 (1937).

The appeal board found that plaintiff's wage-earning capacity was unimpaired at the point his employment with defendant terminated and held that no continuing disability from the original injury on April 6, 1970, was established by the proofs submitted.[1] We feel these findings employ the proper legal standard. Our only function, then, is to determine whether "any evidence" to support these conclusions existed on the record. *Gilbert v Reynolds Metals Co,* 59 Mich App 62, 65; 228 NW2d 542 (1975).

On October 25, 1971, an examination including X-Rays was undertaken by James J. Horvath, M. D. His testimony, presented at the hearing, indicated no basis to find disability at that time:

"*Q.* What did you conclude on the basis of your examination with respect to any disability?

"*A.* I found no evidence of deformity or disability on the objective point of view or from his work history that would be disabling.

\* \* \*

---

[1] "We find that the unrebutted testimony of plaintiff establishes an injury date of April 6, 1970. However, after considering that plaintiff worked at two jobs full time prior to December 29, 1970, and his reason for leaving on that date was, by the majority of lay testimony, because he was not keeping proper work hours with defendant, not because of back pain, we do not find he suffered an injury on that last day worked. Plaintiff did not meet his burden of proof in establishing disability as a result of the April 6, 1970, injury."

"*Q.* Do you have any explanation, from a medical point of view, why one doctor might find a frank muscle spasm on one examination and might not be present at the second examination?

"*A.* Yes.

"*Q.* What would that be, Doctor?

"*A.* Muscle spasm in the chronic phase of a problem is usually intermittent, comes and goes; whereas in the acute phase of a problem, it is there all the time."

Raymond F. Lipton, M. D., also testified concerning plaintiff's hospitalization in April 1971, as the appeal board majority opinion indicates:

"In April 1971 he was hospitalized for thirteen days at the Kirwood Hospital for hypertension condition for being overweight, and because of back symptoms. He was treated with physical therapy and medications. While in the hospital, X-rays of the spine were taken. Apparently, his care was under the supervision of Dr. W. Kyle. At this time he lost seven weeks from his other job at the Parke-Davis Company. While in the hospital a back support was prescribed for him, but he had no other treatment except as indicated. Prior to going to the hospital, he stated that he had palpitation of the heart, much sweating and nausea."

Though Dr. Lipton's later testimony concluded that plaintiff was unable to perform work requiring heavy lifting, we do not believe this evaluation establishes any more readily than Dr. Horvath's contrary evaluation a cause to find disability affecting wage-earning capacity. The appeal board could have chosen to believe either viewpoint. Apparently they believed Dr. Horvath. We will not question their decision now. Consequently, on the basis of the testimony presented and the undisputed fact that plaintiff was employed at two full-time unskilled positions of labor for some eight

months after the injury, we believe evidence does appear to sustain the appeal board's conclusion.

We feel plaintiff's other allegations depend directly on whether the appeal board ruled properly on the presence of a disability. As we feel they did, no need exists to discuss them at length. We believe the appeal board made reference to the circumstances of plaintiff's discharge only to support their opinion that his wage-earning capacity was not impaired through disability. We also feel the concurrent employment doctrine is inapplicable where no disability is found. See *Bowles v James Lumber Co,* 345 Mich 292; 75 NW2d 822 (1956).

Affirmed.

BASHARA, J., concurred.

BRONSON, J. *(dissenting).* I dissent. I cannot accept the conclusion upon which the majority opinion is premised, that the appeal board employed the proper legal standard in denying benefits to plaintiff. The board made the following findings:

"We find that the unrebutted testimony of plaintiff establishes an injury date of April 6, 1970. However, after considering that plaintiff worked at two jobs full time prior to December 29, 1970, and his reason for leaving on that date was, by the majority of lay testimony, because he was not keeping proper work hours with defendant, not because of back pain, we do not find he suffered an injury on that last day worked. Plaintiff did not meet his burden of proof in establishing disability as a result of the April 6, 1970, injury. He should, however, be reimbursed for medical expenses paid as a result of that injury, and unpaid medical bills related to that injury should be paid."

I cannot conclude from these findings, as does

the majority, that the board found: " * * * that plaintiff's wage-earning capacity was unimpaired". Rather, it appears that the board's conclusion that plaintiff did not meet his burden of proving disability was premised on two factors. First, that plaintiff continued to work at two jobs after the date of the injury and, second, that plaintiff was subsequently discharged for cause. We must accept these factual determinations by the board, as they are supported by evidence on the record. However, if the board's conclusion that plaintiff had failed to prove a disability was premised on these two factors alone, as their opinion suggests, then their conclusion was based on an erroneous legal standard and new findings are required. The board's findings suggest that the determination which was made below was that plaintiff had suffered no wage loss as a result of the injury. However, the relevant inquiry, as ably stated in the majority opinion, was whether plaintiff had suffered a loss of wage-earning *capacity* as a result of the injury.

In *Pulley v Detroit Engineering & Machine Co,* 378 Mich 418, 423; 145 NW2d 40 (1966), the Supreme Court stated:

" * * * Presumably and actually, an employee can be injured, disabled to a degree, and yet suffer no weekly wage loss because he is shown to be able to earn an amount equal to or greater than that which he was earning at the time of his injury. In many instances from the highest motives of desire to rehabilitate the employee and restore him as a wage-earning member of society, some employers have retained injured employees in new jobs within their capacity to perform. It is not difficult to perceive, however, that an ill-intentioned employer desirous of avoiding compensation payments could rehire an injured and disabled employee, establish his capacity to earn as much or more than before his injury and terminate his employment. Then,

if the bare elements of proof of what the employee was paid were construed as establishing his 'earning capacity' the whole purpose of the act would be vitiated."

*Medacco v Campbell, Wyant & Cannon Foundry Co,* 48 Mich App 217; 210 NW2d 360 (1973), involved an analogous issue. There the Workmen's Compensation Appeal Board had found that the claimant had suffered a compensable injury to his hand as well as a noncompensable heart condition, had continued to work for a time, and eventually quit his job because of his heart condition. The board found:

" 'A careful review of the record leads us to the inescapable conclusion plaintiff's non-compensable heart condition and not his hand problem accounts for his wage loss and that the referee erred in finding that plaintiff is totally disabled as a result of his 1964 hand injury.' " *Medacco, supra,* p 220. (Emphasis in Court of Appeals opinion omitted.)

On appeal, this Court reversed the board's decision denying the claimant continuing compensation based on the hand injury, and remanded for further factual findings. This Court said:

" * * * The Workmen's Compensation Appeal Board found that plaintiff's wage loss was due to his noncompensable heart condition, but made no specific finding as to the effect of the hand injury on plaintiff's earning *capacity,* other than implying that since there was no apparent wage loss until the heart attack, there could be no compensable disability from the hand injury. The board's legal reasoning was erroneous. It apparently felt that because there was no wage loss there was no 'impairment of his earning capacity in the employment in which he was working at the time of the injury'. MCLA 412.11; MSA 17.161. While an actual wage earning differential may be considered evidence of capacity,

it cannot alone be considered determinative. For were it otherwise, if an employee somehow adjusted and mitigated the effect of an injury to continue working at his full pre-injury performance level, he would be punished by a denial of compensation for his injury since he had suffered no wage loss. In short, by the reasoning of the appeal board, an injured worker who quits his job or seeks easier work at less pay from his employer could get compensation, but a stalwart employee who adjusts to the injury and stays on his job is left without a remedy for his condition. We cannot see how such reasoning would be consistent with the policy objective behind the wage-earning capacity proviso of MCLA 412.11; MSA 17.161. 'The proviso was adopted to relieve the employer of the payment of compensation pro tanto, *if and while the employee has capacity to earn* sufficient wages in the same or another occupation.' (Emphasis supplied.) *Markey v SS Peter & Paul's Parish,* 281 Mich 292, 298; 274 NW 797, 800 (1937). Medacco seeks compensation for an injury of a character, according to the referee, that is totally disabling. His post-injury earnings do not necessarily determine the fact of his disability." *Medacco, supra,* pp 221–222.

Similarly, in this case, the board has made no specific finding as to the effect of the plaintiff's back injury on his earning *capacity,* other than the implication that there could be no compensable disability because plaintiff suffered no apparent wage loss until he was forced by defendant to resign his job for reasons not relating to his back injury. If this was the board's reasoning, it was erroneous. I would conclude that further findings as to plaintiff's capacity to earn wages are needed.

I do not dispute the majority's conclusion that the record contained evidence which could have supported a board finding that plaintiff suffered no loss of wage-earning capacity. This record would support such a finding, if made pursuant to the correct legal standard, as it would support a find-

ing that plaintiff is entitled to benefits. But here it appears that the board's conclusion that plaintiff had not proved the disability followed only from their finding that the plaintiff had been fired for cause, a finding which does not establish that plaintiff suffered no loss of wage-earning capacity. I would remand for further findings.