STEWART *v.* LAKEY FOUNDRY & MACHINE CO.

1. WORKMEN'S COMPENSATION—OCCUPATIONAL DISEASE—REPORT OF
MEDICAL COMMISSION.

    The report of a medical commission appointed pursuant to the
occupational disease amendment of the workmen's compensa-
tion act is final and conclusive as to examined employee's
condition on the date of the examination (Act No. 10, pt. 7,
§ 6, Pub. Acts 1912 [1st Ex. Sess.], as added by Act No. 61,
Pub. Acts 1937).

2. SAME—OCCUPATIONAL DISEASE—RIGHT TO COMPENSATION FOR
TOTAL DISABILITY.

    Under the occupational disease amendment to the workmen's
compensation act, the right to compensation for total disability
is not dependent upon the employee's total disability to per-
form any work, it being sufficient merely to show that he was
disabled from earning full wages at the work in which he was
last subjected to the conditions resulting in disability (Act
No. 10, pt. 7, § 1, Pub. Acts 1912 [1st Ex. Sess.], as added
by Act No. 61, Pub. Acts 1937, and amended by Act No. 245,
Pub. Acts 1943).

3. SAME—OCCUPATIONAL DISEASE—TOTAL DISABILITY—FOUNDRY
CHIPPER—EVIDENCE.

    Foundry chipper whose wages were $125 a week when disabled
and because of pneumoconiotic condition of lungs could not re-
turn to such employment was properly found totally disabled
from earning full wages at work at which employed when last
subjected to the conditions resulting in disability notwith-
standing his wages in city police department were $42.50 a
week (Act No. 10, pt. 7, § 1, Pub. Acts 1912 [1st Ex. Sess.],
as added by Act No. 61, Pub. Acts 1937, and amended by
Act No. 245, Pub. Acts 1943).

4. Same—Pneumoconiosis—Date of Injury—Finding of Department.

Finding of department of labor and industry that foundry chipper became disabled from pneumoconiosis on the last day he was employed by defendant *held,* correct in view of statutory definition of date of injury (2 Comp. Laws 1929, § 8417, as amended by Act No. 245, Pub. Acts 1943; Act No. 10, pt. 7, § 7, Pub. Acts 1912 [1st Ex. Sess.], as added by Act No. 61, Pub. Acts 1937).

5. Same—Foundry Chipper—Disability—Pneumoconiosis—Evidence.

Finding of department of labor and industry that plaintiff was disabled by pneumoconiosis from working at his skilled employment as a chipper in a foundry *held,* supported by report of medical commission, plaintiff's own testimony, and testimony of others including two physicians, one of whom was a specialist in the treatment of chronic diseases of the lungs (Act No. 10, pt. 7, Pub. Acts 1912 [1st Ex. Sess.], as added by Act No. 61, Pub. Acts 1937, and amended by Act No. 245, Pub. Acts 1943).

6. Same—Occupational Disease—Construction of Statutes.

The workmen's compensation act and amendments to it relating to occupational diseases should be read and construed together (Act No. 10, pt. 7, Pub. Acts 1912 [1st Ex. Sess.], as added by Act No. 61, Pub. Acts 1937, and amended by Act No. 245, Pub. Acts 1943).

7. Same—Occupational Disease—Pneumoconiosis—Graduated Benefits.

Since pneumoconiosis was a compensable dust disease under the original occupational disease amendment to the workmen's compensation act, foundry chipper who was found totally disabled therefrom nearly six years after such amendment became effective was entitled to maximum benefit under the graduated-benefit provision of such act as amended (Act No. 10, pt. 7, §§ 1 [c], 2, 4, Pub. Acts 1912 [1st Ex. Sess.], as added by Act No. 61, Pub. Acts 1937, and amended by Act No. 245, Pub. Acts 1943).

8. Same—Findings of Department—Evidence.

The Supreme Court does not disturb findings of fact of the department of labor and industry that are supported by competent testimony.

Appeal from Department of Labor and Industry. Submitted April 14, 1945. (Docket No. 25, Calendar No. 42,968.)    Decided May 14, 1945.

Archie A. Stewart presented his claim for compensation against Lakey Foundry & Machine Company, employer, for disability due to occupational disease. Award to plaintiff. Defendant appeals. Affirmed.

*R. Burr Cochran,* for plaintiff.

*Joseph T. Riley,* for defendant.

STARR, C. J.    Defendant appeals from an order of the department of labor and industry awarding plaintiff compensation for total disability under the occupational disease amendment to the workmen's compensation law (Act No. 10, pt. 7, Pub. Acts 1912 [1st Ex. Sess.], as added by Act No. 61, Pub. Acts 1937, and amended by Act No. 245, Pub. Acts 1943 [Comp. Laws Supp. 1940, 1943, § 8485-1 *et seq.,* Stat. Ann. 1944 Cum. Supp. § 17.220 *et seq.*]).

Plaintiff was employed as a chipper in defendant's foundry in Muskegon during the periods from September 16, 1940 to July 10, 1942, from August 31, 1942 to April 10, 1943, and from May 29, 1943 to September 30, 1943. In his work plaintiff used an air hammer with chisel attachments to remove sand, lumps, and excess metal from iron castings. This chipping process created much dust. Plaintiff worked near a sand-blast machine, which also created dust. He said that he had no trouble breathing and that his health was good prior to 1943. In July, 1943, defendant sent plaintiff and other employees to its doctor for X-ray examinations. The

doctor who made the examination stated that in his opinion plaintiff had "a beginning silicosis  *  *  * the first stages of dust disease of the lungs." Defendant then requested plaintiff to sign a waiver of compensation but he refused. On the advice of his physician he terminated his employment with defendant on September 30, 1943, and his separation notice stated that the reason for termination was "health reasons," "doctor's orders."

About October 15, 1943, plaintiff entered the employ of the Norge Division of Borg-Warner Corporation in Muskegon, as a lime loader, and continued working there until about March 1, 1944, when he was obliged to quit because of his physical condition. In his work at the Norge plant he was not subjected to dust conditions. After leaving Norge, he went to Texas and Arizona for his health. He returned to Muskegon in April, 1944, and obtained employment with the Acme Private Police, doing plant protection work. In June he left the Acme and since then has been in the employ of the Muskegon police department.

On February 17, 1944, plaintiff filed application for adjustment of claim, alleging total disability from pneumoconiosis resulting from continued exposure to dust in defendant's foundry. Defendant answered denying liability. In pursuance of part 7, section 6, of the workmen's compensation law,* the department of labor and industry appointed a medical commission of three physicians, who examined plaintiff on April 19, 1944. The commission filed a unanimous report stating that he was suffering from pneumoconiosis. Its report was "final and conclusive" as to his condition on that

---

* Act No. 10, pt. 7, § 6, Pub. Acts 1912 (1st Ex. Sess.), as added by Act No. 61, Pub. Acts 1937 (Comp. Laws Supp. 1940, § 8485–6, Stat. Ann. 1944 Cum. Supp. § 17,225).

date. *Walker* v. *LoSelle Construction Co.,* 305 Mich. 121.

The matter was heard by a deputy commissioner, who awarded plaintiff compensation for total disability from pneumoconiosis at the rate of $21 a week from March 1, 1944, but not to exceed the aggregate sum of $4,000 (part 7, section 4, of the workmen's compensation law, as amended*). On review the deputy's award was modified, and plaintiff was given compensation for total disability from pneumoconiosis at the rate of $21 a week from September 30, 1943, to October 15, 1943, and from March 1, 1944, until the maximum allowance of $4,000 had been paid. He was not awarded compensation for the period from October 15, 1943, to March 1, 1944, because his earnings during that period at the Norge Division of Borg-Warner were substantially equivalent to the amount he was earning at defendant's foundry at the time of his disablement on September 30, 1943 (part 2, section 11, of the workmen's compensation law, as amended †). Having obtained leave, defendant appeals from the department's award.

In its opinion the department determined that plaintiff's condition, both before and subsequent to his examination by the medical commission, was the same as his condition at the time of the examination. It also found that the disease of pneumoconiosis, with which plaintiff was afflicted, was caused by dust from the "cutting, grinding or polishing of metal and was due to causes and condi-

---

* Act No. 10, pt. 7, § 4, Pub. Acts 1912 (1st Ex. Sess.), as added by Act No. 61, Pub. Acts 1937, and amended by Act No. 245, Pub. Acts 1943 (Comp. Laws Supp. 1943, § 8485-4, Stat. Ann. 1944 Cum. Supp. § 17.223).

† 2 Comp. Laws 1929, § 8427, as amended by Act No. 245, Pub. Acts 1943 (Comp. Laws Supp. 1943, § 8427, Stat. Ann. 1944 Cum. Supp. § 17.161).

tions which are characteristic of and peculiar to the particular employment in which plaintiff was engaged" in defendant's foundry, and that this disease arose out of and in the course of said employment. The department further found that, because of pneumoconiosis, plaintiff was unable to continue the skilled work as a chipper which he was performing when he contracted said disease, and that he was, therefore, totally disabled. It further found that he was disabled as of September 30, 1943, that being his last day of work at the employment in which he was last subjected to the dust conditions resulting in his disability.

The record shows that during his last employment by defendant, plaintiff received wages of $125 a week. During his employment by the Acme Private Police, subsequent to his disablement, he received about $35 a week. He testified that his wages in the Muskegon police department would be about $35 a week for the first six months and thereafter at the rate of $2,220 a year, which would be about $42.50 a week.

Defendant first contends that plaintiff would not be entitled to compensation unless he was totally disabled from performing any work. We cannot agree with this contention. Part 7, section 1, of the workmen's compensation law, as amended,* defines disability as "the state of being disabled from earning full wages at the work in which the employee was last subjected to the conditions resulting in disability." At the time of his disablement plaintiff was employed in skilled work as a chipper in defendant's foundry, and his wages were about $125 a week. There was competent testimony supporting

---

* Act No. 10, pt. 7, § 1, Pub. Acts 1912 (1st Ex. Sess.), as added by Act No. 61, Pub. Acts 1937, and amended by Act No. 245, Pub. Acts 1943 (Comp. Laws Supp. 1943, § 8485-1, Stat. Ann. 1944 Cum. Supp. § 17.220).

the department's finding that, because of the pneumoconiotic condition of his lungs, he could not return to such employment. His wages in the Muskegon police department apparently would not exceed $42.50 a week. He was, therefore, disabled from earning full wages at the work at which he was employed when last subjected to the conditions resulting in disability. The department correctly determined that he was disabled within the definition of disability in part 7, section 1, above quoted. *Flanigan* v. *Reo Motors, Inc.,* 300 Mich. 359; *Brozozowski* v. *Swedish Crucible Steel Co.,* 298 Mich. 146.

Part 2, section 1, of the workmen's compensation law, as amended,[*] provides:

"The term 'time of injury' or 'date of injury' as used in this act shall in the case of a disease or in the case of an injury not attributable to a single event be the last day of work in the employment in which the employee was last subjected to the conditions resulting in disability or death."

Plaintiff was last employed by defendant on September 30, 1943, and the department correctly determined that he became disabled on that date.[†]

Defendant contends that there was no evidence supporting the department's finding that plaintiff was disabled from working at his skilled employment as a chipper. We cannot agree with this contention, as the record shows competent testimony supporting the finding. The medical commission which examined plaintiff on April 19, 1944, reported that he was afflicted with pneumoconiosis. Furthermore, there was competent testimony support-

[*] 2 Comp. Laws 1929, § 8417, as amended by Act No. 245, Pub. Acts 1943 (Comp. Laws Supp. 1943, § 8417, Stat. Ann. 1944 Cum. Supp. § 17.151).
[†] See, also, Act No. 10, pt. 7, § 7, Pub. Acts 1912 [1st Ex. Sess.], as added by Act No. 61, Pub. Acts 1937 (Comp. Laws Supp. 1940, § 8485-7, Stat. Ann. 1944 Cum. Supp. § 17.226).—REPORTER.

ing the department's finding that plaintiff's condi-. tion both before and subsequent to the date of his examination by the medical commission was the same as at the time of his examination. Plaintiff testified:

"*Q.* * * * Did you notice any trouble in breathing or working?

"*A.* Yes, it got so my work was getting harder for me, and I would get tired.

"*Q.* When did you first notice that?

"*A.* I would say about five months before I quit. * * *

"I went to see my family doctor in Scottville. He advised me to get out of the foundry. * * *

"I would work two or three hours, then could hardly stand it. I was shaky and tired out. * * *

"*Q.* Are you able to do a chipping job now?

"*A.* No, sir, I couldn't stand it. * * *

"*Q.* Is your health improving in the work you are doing today?

"*A.* I can't see that it is, no."

A doctor who examined plaintiff testified:

"*Q.* A man with pneumoconiosis, would he be disabled from continuing on his chipping job under like conditions and dust? * * *

"*A.* If a man shows silicosis, he should not work in that type of work. * * *

"*Q.* * * * Would (you) say that condition, * * * that he shouldn't work in dust, is a permanent situation?

"*A.* Yes. * * *

"Silicosis is dust particles which can be seen in the chest, the shadow that is thrown when an X-ray is taken. * * *

"Pneumoconiosis is the fibrous tissue, material, laid down in the lung tissue as a result of irritation from dust."

Dr. Bartlett, a specialist in the treatment of chronic diseases of the lungs, who was called as a

witness by defendant and who examined the X-rays taken of plaintiff's chest in July, 1943, testified:

"This chest film (of plaintiff) presented a moderate to a marked generalized pneumoconiosis throughout the lung cells with scattered nodulation. * * *

"In this instance, we have to consider the occupation of the individual. It comes under the general term of pneumoconiosis, and under the general term comes the term silicosis. * * *

"*Q.* Is there a difference between silicosis and pneumoconiosis? * * *

"*A.* Pneumoconiosis is a general term and applies to the condition that comes about because of inhalation of any type of dust. * * *

"Coal, iron, or any dust, comes under the general term, pneumoconiosis. * * *

"*Q.* This film (of plaintiff's chest), * * * does that show silicosis or pneumoconiosis?

"*A.* It shows both; it shows silicosis and pneumoconiosis.

"*Q.* In this particular instance, they are the same?

"*A.* Yes, in general terms they are. * * *

"*Q.* I will ask you whether or not you have compared the films of July 6, 1944, with the film * * * of July, 1943?

"*A.* I have. * * *

"The interpretation is practically the same. "No appreciable change. * * *

"*Q.* You wouldn't recommend that he (plaintiff) go back in the foundry?

"*A.* I would not recommend anyone exposed to dust hazard and developing silicosis to return to a foundry, unless absolutely necessary."

We conclude that the above-quoted and other testimony supported the department's finding that plaintiff was disabled from working at his skilled employment as a chipper.

Defendant next contends that the department erroneously computed the compensation to which plaintiff was entitled. He was disabled as of September 30, 1943, and defendant argues that his compensation should be determined from July 30, 1943, the date on which Act No. 245, Pub. Acts 1943, became effective. That is, it claims that, as plaintiff's disablement occurred during the second month after the effective date of said act, he was entitled to compensation of only $550. Such contention and argument are clearly erroneous. The 1943 act omitted the schedule of compensable diseases included in Act No. 10, pt. 7, § 2, Pub. Acts 1912 (1st Ex. Sess.), as added by Act No. 61, Pub. Acts 1937. Part 7, § 1 (c), of the 1943 act provides in part:

"The term 'personal injury' shall include a disease or disability which is due to causes and conditions which are characteristic of and peculiar to the business of the employer and which arises out of and in the course of the employment."

Part 7, § 4, of the 1943 act provides in part:

"In no event shall such compensation exceed an aggregate total of $4,000: Provided, That where silicosis or other dust diseases *not theretofore compensable,* are *first* made compensable *by any amendment* to the workmen's compensation law, *then in such instances* the graduated benefit provision of this section shall begin to apply to disability or death resulting from such diseases as of the *effective date of such amendment.*"

The workmen's compensation law and the occupational disease amendments of 1937 and 1943 should be read and construed together. *Rueter* v. *Rinshed Mason Co.,* 303 Mich. 550; *Sutter* v. *Kalamazoo Stove & Furnace Co.,* 297 Mich. 226.

Under the above-quoted proviso (part 7, § 4) of the 1943 act, the compensation for dust diseases

made compensable by the 1937 amendment should be determined "as of the effective date of such (1937) amendment." Pneumoconiosis caused by "quarrying, cutting, crushing, grinding or polishing of metal" was made compensable by part 7, § 2, subd. 31, of the 1937 act. *Sutter* v. *Kalamazoo Stove & Furnace Co., supra.* Therefore, under the above-quoted proviso of the 1943 act, the graduated-benefit provision of the 1937 act (effective October 29, 1937) was applicable in determining the compensation to which plaintiff was entitled. He was disabled in the 71st calendar month after the 1937 act became effective and is entitled to the maximum benefit of $4,000, as provided in the 1943 act.

As there was competent testimony supporting the several findings of fact by the department of labor and industry, we will not disturb such findings. *Flanigan* v. *Reo Motors, Inc., supra; Brozozowski* v. *Swedish Crucible Steel Co., supra.*

The department correctly determined the compensation to which plaintiff was entitled for total disability from pneumoconiosis. The department's award is affirmed. Plaintiff may recover costs.

NORTH, WIEST, BUTZEL, BUSHNELL, SHARPE, BOYLES, and REID, JJ., concurred.