LESKINEN v EMPLOYMENT SECURITY COMMISSION

Docket No. 56645. Argued March 3, 1976 (Calendar No. 8).—Decided December 21, 1976.

Plaintiff George Leskinen worked as a weighmaster and bridge operator for the state until he was assigned as a claims interviewer for the Employment Security Commission. After accepting his new job, which included clerical activities, screening applicants for unemployment compensation, and answering questions at the counter, the plaintiff began to suffer from nervousness and inability to concentrate on his work, which increased until claimant, his family doctor, and a psychiatrist he consulted felt he was unable to return to work because of a depressive reaction. The Workmen's Compensation Appeal Board denied the plaintiff disability benefits on the ground that his disability was not work-related. The Court of Appeals, T. M. Burns, P. J., and Quinn and O'Hara, JJ., affirmed per curiam (Docket No. 19180). The plaintiff appeals. *Held:*

1. The statement by the Workmen's Compensation Appeal Board that the plaintiff "is not disabled" is not explained or otherwise related to any testimony quoted in the opinion of the board. Because of the ambiguous language of the board's opinion, it is not possible to say with reasonable certainty whether the Workmen's Compensation Appeal Board improperly applied the statute in determining the existence of an injury, or made a proper factual determination which would be beyond the scope of review. Therefore, the Supreme Court is unable to discharge its review function properly.

2. If the Workmen's Compensation Appeal Board reasoned that, although the plaintiff may have suffered a disabling

REFERENCES FOR POINTS IN HEADNOTES

[1] 82 Am Jur 2d, Workmen's Compensation § 373.
Workmen's compensation: right to compensation as affected by fact that injured employee earns, or is offered, as much as, or more than, before the injury. 149 ALR 413.
[2] 82 Am Jur 2d, Workmen's Compensation § 240 *et seq.*
[3] 82 Am Jur 2d, Workmen's Compensation § 338 *et seq.*
[4, 5] 82 Am Jur 2d, Workmen's Compensation §§ 630, 635.
[6, 7] 82 Am Jur 2d, Workmen's Compensation §§ 301, 302.

injury, his earning capacity from other employments was not impaired and concluded that he did not suffer a personal injury entitling him to workmen's compensation benefits, the decision of the board was erroneous. Eligibility for workmen's compensation benefits is established when an employee proves that he has suffered a personal injury which arose out of and in the course of his employment. "Earning capacity" is a factor in determining the amount of benefits, not whether a claimant has suffered a work-related personal injury.

3. On remand, the Workmen's Compensation Appeal Board should indicate the testimony adopted, the standard followed, and the reasoning it used in reaching its conclusion. The Supreme Court cannot review the findings of the board as a question of law if it has done nothing more than present a conclusory finding in the form of the statutory language.

Remanded for further proceedings.

Justice Lindemer, with Justices Coleman and Fitzgerald concurring, would affirm the denial of benefits. There was expert psychiatric testimony to support the conclusion that the plaintiff could not handle his job and that he was not disabled. The language of the statute, "a personal injury arising out of and in the course of his employment" should not be stretched to a holding that the emotional disturbance suffered by any employee who takes a job for which he is not emotionally suited is a compensable injury. In any event, the record does not support a claim for continuing disability in the light of expert testimony that the claimant could "go to work right now".

### OPINION OF THE COURT

1. WORKMEN'S COMPENSATION—ELIGIBILITY FOR BENEFITS—INJURY—EARNING CAPACITY.

Reasoning that although a worker suffered a disabling injury his earning capacity in other employment was not impaired, and that therefore he did not suffer a personal injury entitling him to workmen's compensation benefits is erroneous (MCL 418.301, 418.371; MSA 17.237[301], 17.237[371]).

2. WORKMEN'S COMPENSATION—ELIGIBILITY FOR BENEFITS—INJURY—AMOUNT OF BENEFITS.

Eligibility for benefits under the workmen's compensation act is established when an employee proves that he has suffered a personal injury which arose out of and in the course of his employment; it is only after this threshold determination that

the amount of benefits is computed (MCL 418.301, 418.371; MSA 17.237[301], 17.237[371]).

3. WORKMEN'S COMPENSATION—INJURY—EARNING CAPACITY.

"Earning capacity" is a factor in determining the amount of benefits, not whether a claimant for workmen's compensation benefits has suffered a work-related personal injury (MCL 418.301, 418.371; MSA 17.237[301], 17.237[371]).

4. WORKMEN'S COMPENSATION—APPEAL AND ERROR—FINDINGS OF FACT.

The Supreme Court is bound by law to accept a decision of the Workmen's Compensation Appeal Board where a claimant applied for permanent and total disability benefits, if the board correctly understood the law and determined as a matter of fact that the claimant did not suffer permanent and total disability; if, however, the board erroneously interpreted the Worker's Disability Compensation Act in reaching its decision, the Court has the duty and authority to correct any erroneous legal conclusions (Const 1963, art 6, § 28; MCL 418.861; MSA 17.237[861]).

5. WORKMEN'S COMPENSATION—APPEAL AND ERROR—FINDINGS OF FACT.

The Supreme Court must remand a case to the Workmen's Compensation Appeal Board for further proceedings where the Court is unable to perform its review function because the opinion of the board that the claimant "is not disabled" is not explained or otherwise related to any testimony quoted in the opinion, and the opinion does nothing more than present a conclusory finding in the form of the statutory language.

DISSENTING OPINION

COLEMAN, FITZGERALD, and LINDEMER, JJ.

6. WORKMEN'S COMPENSATION—INJURY—EMOTIONAL DISTURBANCE.

*The emotional disturbance suffered by an employee who takes a job for which he is not emotionally suited is not a compensable injury under the Worker's Disability Compensation Act where the employee's disability was not due to his employment but arose solely because of his personal albeit subconscious dissatisfaction with his job and there was expert testimony to support the Workmen's Compensation Appeal Board's decision that the employee was not disabled (MCL 418.301; MSA 17.237[301]).*

7. Workmen's Compensation—Emotional Disturbance.

> The decision to award workmen's compensation benefits to those
> with an emotional disturbance is a policy decision which should
> be left to the Legislature.

*Wisti & Jaaskelainen* (by *James F. Tercha)* for plaintiff.

*Vandeveer, Giarzia, Tonkin, Kerr & Heaphy, P. C.* (by *James A. Sullivan)* for defendants.

Ryan, J. The plaintiff, George Leskinen, appeals the affirmance by the Court of Appeals of a Workmen's Compensation Appeal Board decision denying him benefits under the Worker's Disability Compensation Act.

We hold that the board's opinion is lacking in sufficient clarity to enable this Court to properly discharge its review function and we remand the case to the board for clarification of its findings.

I

George Leskinen was employed by the State of Michigan in various capacities beginning in 1956. He worked first as a weighmaster but after a reorganization of the executive department of state government, accepted a job as a bridge operator in Ontonagon in order to remain in the Upper Peninsula. The change of jobs entailed a reduction in pay. Despite that fact he continued to work as a bridge operator for about two years. Then in July, 1970 he became an employment and claims interviewer for the Michigan Employment Security Commission (MESC) in Calumet.

In his new job as a claims interviewer Leskinen was required to perform clerical activities, and to interview prospective workers to determine whether these people were eligible for unemploy-

ment compensation. He was also required to do
"counter work" which his appellate counsel de-
scribed as "assuring that people entitled to unem-
ployment compensation received it, and answering
their questions".

He claimed that his work with the MESC proved
to be frustrating to him and placed him under
significant strain and pressure. He alleged that he
began to suffer from nervousness and an inability
to concentrate, finding difficulty in adding and
subtracting simple numbers.

Leskinen's problems apparently persisted and he
quit his job on January 11, 1971. Subsequently, he
sought medical advice from his family physician,
Dr. Repola, and later consulted two psychiatrists
who examined and treated him. One of the psychi-
atrists diagnosed Leskinen's condition as an "anxi-
ety tension state" and the other described him as
suffering from "depressive reaction".

Dr. Repola testified that Leskinen's emotional
condition was related, *inter alia,* "to the trauma of
the change of jobs", that "this change of job * * *
precipitate[d] the problem" and that Leskinen's
"job at the time might have contributed to [his]
condition". Dr. Garaza, one of the psychiatrists
who treated Leskinen, testified on the basis of a
hypothetical question put to him by claimant's
attorney, that Leskinen's "job at the time might
have contributed to [his] condition". Dr. Garaza
also testified that he believed Leskinen could prob-
ably perform well on a job he liked.

The hearing referee denied claimant benefits
stating:

"A hearing having been held on February 24, 1972 at
Hancock, Michigan on petition of (plaintiff), I find as
follows:
"That the above named employee (did not) receive a

personal injury arising out of and in the course of (his) employment by the above named employer on January 11, 1971 * * * ".

The Workmen's Compensation Appeal Board affirmed the decision of the hearing referee. The Court of Appeals granted leave to appeal and affirmed in an unpublished per curiam opinion on January 13, 1975.[1]

## II

Plaintiff contends that the board erroneously interpreted the applicable law in reaching its decision. Defendants argue that the board correctly applied the law and denied benefits because it found as a matter of fact that plaintiff suffered no compensable injury and that such a determination is beyond the review powers of this Court. Const 1963, art 6, § 28; MCLA 418.861; MSA 17.237(861).

In its opinion, the board quoted from the testimony of Dr. Repola, summarized above, and concluded:

"It is very much evident in this record that plaintiff simply could not handle the job of employment and claims interviewer and just as evident that he is not disabled."

The statement that "he is not disabled", however, is not explained or otherwise related to any testimony quoted in the opinion.

The board then quoted from the testimony of Dr. Garaza, buttressing his conclusion that the claimant "would probably be able to perform well" on a job that he liked by quoting the claimant's own description of certain home remodeling activities

---

[1] Docket No. 19180 (T. M. BURNS, P. J., QUINN and O'HARA, JJ.).

he had engaged in since the alleged injury. The board's concluding paragraph then states:

"Plaintiff's inability to perform satisfactorily on the employment and claims interviewer job even though it may have caused some emotional distress in no way provides a proper basis for a claim of disability causally connected with his employment. The referee was correct in finding that plaintiff's 'alleged disability is not related to employment with the defendant'."

That seemingly unequivocal "finding" is immediately followed, however, by the following:

"Further, the plaintiff's ability to perform the various tasks he described such as installing a bathroom, remodeling a kitchen, putting sinks, cupboards and a furnace in his house, insulating an attic, installing wood paneling and building a garage effectively negate his claim of disability. We are mindful, too, that Doctor Repola, his psychiatrist,[2] was of the opinion that plaintiff could probably 'perform well' on 'a job that he liked.'
"The decision of the referee will be affirmed."

Plaintiff argues that the board improperly relied on the limiting language of MCLA 418.371; MSA 17.237(371) in determining whether he suffered a work-related injury. MCLA 418.371(1); MSA 17.237(371)(1) provides:

"The weekly loss in wages referred to in this act shall consist of such percentage of the average weekly earnings of the injured employee computed according to the provisions of this section as shall fairly represent the proportionate extent of the impairment of his earning

---

[2] The board apparently misstated itself. Although the quoted remarks are properly attributed to "his [plaintiff's] psychiatrist", the psychiatrist was Dr. Garaza. Dr. Repola was claimant's family physician.

capacity in the employment in which he was working at the time of the injury, the same to be fixed as of the time of the injury, but to be determined in view of the nature and extent of the injury. *The compensation payable, when added to his wage earning capacity after the injury in the same or another employment, shall not exceed his average weekly earnings at the time of such injury.*"(Emphasis added.)

He contends that the concluding language of the board's opinion suggests that the board's "finding" that the claimant's "alleged disability is not related to employment with the defendant" rests upon its conclusion that Leskinen was capable of doing other kinds of work including a number of plumbing, carpentry and home repair tasks and that, as observed by Dr. Garaza, the "plaintiff could probably perform well on a job that he liked". Thus, Leskinen argues, the board appears to have relied upon the foregoing statutory language in determining that, although Leskinen may have suffered a disabling injury, his earning capacity in other employments such as carpentry, plumbing and home repairs was not impaired and concluded therefrom that he did not suffer a personal injury entitling him to benefits under the act.

If that was the board's reasoning, it was indeed erroneous.

*Eligibility* for benefits under the act is established when an employee proves that he has suffered a personal injury which arose "out of and in the course of his employment". MCLA 418.301(1); MSA 17.237(301)(1). *Van Atta v Henry,* 286 Mich 379; 282 NW 185 (1938). It is only after this threshold determination that the *amount* of benefits is then computed. The statutes[3] and the prior

_____

[3] The rate of compensation is determined according to MCLA

decisions of this Court[4] make apparent the fact that "earning capacity" is a factor in calculating the *amount of benefits,* not whether a claimant has suffered a work-related *personal injury.*

However, because of the language of the board's opinion, we are unable to say with reasonable certainty whether the board improperly utilized MCLA 418.371; MSA 17.237(371) in passing on the existence of an injury, or made a proper factual determination which would be beyond our scope of review. It is impossible, therefore, for this Court to properly discharge its review function.

### III

We were confronted with a similar problem in *DeGeer v DeGeer Farming Equipment Co,* 391 Mich 96; 214 NW2d 794 (1974), where Justice SWAINSON stated for the Court:

"Our first step in reviewing a decision of the Workmen's Compensation Appeal Board is to separate its findings of fact from its understanding of the law controlling the case. If the Appeal Board correctly understood the law and determined as a matter of fact that appellant did not suffer permanent and total disability, we are bound by law to accept its decision in this case. Const 1963, art 6, § 28; MCLA 418.861; MSA 17.237(861). If, however, the Appeal Board erroneously

---

418.321; MSA 17.237(321), MCLA 418.351; MSA 17.237(351), or MCLA 418.361; MSA 17.237(361), depending on whether the employee's work-related injury results in death, total disability or partial disability. The "rate" of compensation is a percentage of the employee's "average weekly wage". The term "average weekly wage" is defined by MCLA 418.371; MSA 17.237(371) to be the measure of the employee's "earning capacity in the employment in which he was working at the time of the injury".

[4] *E.g., Pulley v Detroit Engineering & Machine Co,* 378 Mich 418; 145 NW2d 40 (1966); *Kaarto v Calumet & Hecla, Inc,* 367 Mich 128; 116 NW2d 225 (1962); *Geis v Packard Motor Car Co,* 214 Mich 646; 183 NW 916 (1921).

interpretated *[sic]* the Workmen's Compensation Act in reaching its decision, we have the duty and authority to correct any such erroneous legal conclusions. *Id.*

"In the present case we are unable to perform that necessary first step of review. Unfortunately, the opinion of the Appeal Board has combined its findings of fact and legal conclusions in such a manner that the opinion may be fairly read to support either appellant's position that the Appeal Board denied benefits because it interpreted the law to limit recovery to factual situations in which the disability results from a direct injury to the legs, or appellees' position that no permanent and total loss of industrial use was factually established. Consequently, we must remand this case for further proceedings consonant with the remainder of today's opinion.

"In order to allow the appellate courts to properly perform the review function we remind the appeal board that:

" 'We cannot * * * review the findings of the board as a question of law if * * * it has done nothing more than to present us with a conclusory finding in the form of the statutory language. We need to know the path the board has taken through the conflicting evidence. The appeal board should indicate the testimony adopted, the standard followed and the reasoning it used in reaching its conclusion.' *McClary v Wagoner,* 16 Mich App 326, 327–328; 167 NW2d 800 (1969)." 391 Mich at 100–101.

Accordingly, we remand this case to the Workmen's Compensation Appeal Board with direction that it make specific findings of fact and conclusions of law determining whether the plaintiff suffered a personal injury and assigning a factual and legal basis for its conclusion.

Kavanagh, C. J., and Williams and Levin, JJ., concurred with Ryan, J.

Lindemer, J. *(to affirm).* I would affirm the

denial of worker's compensation benefits in this case.

In its opinion, the appeal board said:

"It is very much evident in this record that plaintiff simply could not handle the job of employment and claims interviewer and just as evident that he is not disabled."

There was expert psychiatric testimony to support this conclusion. Plaintiff was described as a "shy" and "introverted" man who was unable to cope with the complex environment.

Apparently when plaintiff changed jobs, he suffered emotional disturbance. Doctor Repola believed that the emotional instability resulted from "the trauma of the change of jobs". Doctor Garaza opined that plaintiff's unhappiness with his transfer of jobs precipitated his emotional reaction. In short, the duties of the new job did not match with plaintiff's established personality. This conflict caused an "anxiety tension state" which left the plaintiff "empty within him[self] and helpless and really discouraged about the fact that he couldn't handle what he was called upon to handle".

To accept plaintiff's argument that he is entitled to benefits would be to hold that the emotional disturbance suffered by any employee who takes a job for which he is not emotionally suited is a compensable injury. I would not stretch the statutory language "a personal injury arising out of and in the course of his employment" to that extreme. The decision to award compensation to those with an emotional instability is a policy decision which should be left to the Legislature.

On the record before us, I must conclude, as did the referee, the Workmen's Compensation Appeal Board, and the Court of Appeals that plaintiff's

disability was not due to his employment, but arose solely because of his personal albeit subconscious dissatisfaction with his job.

In any event I don't believe the record supports a claim for continuing disability. In *Carter v General Motors Corp,* 361 Mich 577, 594; 106 NW2d 105 (1960), the Court said:

"If there were testimony that claimant's inability to work on a production line was caused by the paranoid schizophrenic condition for which we have held he is entitled to compensation benefits, he would be entitled to continuing payment of such benefits. However, Dr. Tourkow testified that as of September 11, 1957, Mr. Carter no longer showed any symptoms of paranoid schizophrenia or other psychosis. He testified that Mr. Carter should not be employed again in production work, not because of his paranoid schizophrenia, but for the same reason he should not have been employed in such work in the first place: Mr. Carter has a personality configuration that makes him more susceptible than others to psychotic breakdowns when subjected to pressures such as are encountered in production line employment. Under the circumstances, we find no evidence to support the appeal board's award continuing compensation benefits beyond September 11, 1957."

In this case, Dr. Garaza testified:

"*Q.* Do you think he's lost his ability to function in any other regard outside of his job?

"*A.* No. Now, are you referring to him now or then?

"*Q.* Well, then and now if there's any difference.

"*A.* Well, then I couldn't tell you for sure; but now, no. I think he could function well in some other setting.

\*   \*   \*

"*Q.* Is there any activity you could think of that you would consider this man disabled from by reason of his present condition, other than this type of work that he was doing?

"*A.* No.

\* \* \*

"*Q.* Could you give us any estimate as to time?
"*A.* He can go to work right now as far as I am concerned."

On these facts, I believe any award of continuing benefits would be improper.

COLEMAN and FITZGERALD, JJ., concurred with LINDEMER, J.