FRAMMOLINO v RICHMOND PRODUCTS COMPANY

1. Workmen's Compensation—Constitutional Law—Appeal Board—Findings of Fact—Questions of Law—Appeal and Error—Statutes.

The factual findings of the Workmen's Compensation Appeal Board are conclusive in the absence of fraud where supported by competent, material and substantial evidence on the whole record; questions of law, however, may be reviewed (Const 1963, art 6, § 28, MCLA 418.861; MSA 17.237[861]).

2. Appeal and Error—Workmen's Compensation—Appeal Board—Conclusions of Board—Basis for Review.

The Workmen's Compensation Appeal Board must indicate the testimony adopted, the standards followed, and the reasoning used in reaching its conclusion, in order for the Court of Appeals to properly review its decisions.

3. Appeal and Error—Workmen's Compensation—Appeal Board—Failure to Supply Information—Remand.

The Workmen's Compensation Appeal Board may not simply order an employer to pay partial disability to an employee where the employee's right to such benefits is not discussed at all in its controlling opinion, and as a result of which lack of information the Court of Appeals is unaware of the legal standard applied, the testimony relied upon, and the board's reasoning; under such circumstances a case should be remanded so that the board can supply the information necessary for appellate review.

4. Workmen's Compensation—Appeal and Error—Appeal Board—Information For Appellate Review—Guidelines—Legal Principles.

The legal principles which should guide the Workmen's Compensation Appeal Board in supplying the information necessary for

References for Points in Headnotes

[1–4, 8] 82 Am Jur 2d, Workmen's Compensation §§ 565–569.
[2] 82 Am Jur 2d, Workmen's Compensation § 613 et seq.
[5, 6] 82 Am Jur 2d, Workmen's Compensation § 340.
[7] 82 Am Jur 2d, Workmen's Compensation § 387.

appellate review of a workmen's compensation case include: (1) it is the loss of wage earning capacity and not actual loss of wages which is compensable under the Worker's Disability Act, (2) a claimant's wage earning capacity following his injury is a question of fact, (3) wage earning capacity is not limited to wages actually earned although that is one factor to be considered, (4) the capacity of a claimant to work and the opportunity to obtain suitable employment should be considered, and (5) the burden of proving reduced earning capacity is upon the plaintiff.

5. WORKMEN'S COMPENSATION—PARTIAL DISABILITY BENEFITS—NEW JOB SKILLS—AVAILABILITY FOR EMPLOYMENT—WAGE EARNING CAPACITY—EMPLOYER RESPONSIBILITY.

An award of partial disability benefits while an employee is not working because of her efforts to acquire a new job skill may be commendable but those efforts are not controlling for the making of the award, because a reduction in the plaintiff's availability for employment due to her studies is not to be considered in determining whether plaintiff's wage earning capacity has been reduced unless she first obtains an adjudication that her employer is financially responsible for her training.

6. WORKMEN'S COMPENSATION—DISABILITY BENEFITS—EARNING CAPACITY—REDUCTION IN WAGES—REGULAR EMPLOYMENT—JOB PREFERENCE—RESPONSIBILITY OF EMPLOYER.

One of the purposes of testing the right to worker's disability benefits by a reduction in wage earning capacity, rather than solely by a reduction in wages actually earned, is to preclude a claimant from benefiting from a unilateral decision to refrain from employment, and if a plaintiff's studies in an effort to acquire a new job skill represent a personal choice regarding career objectives, rather than rehabilitation necessitated by a work related injury, the employer is not responsible for that aspect of plaintiff's diminished earning capacity.

7. WORKMEN'S COMPENSATION—VOCATIONAL REHABILITATION BENEFITS—EMPLOYER'S RESPONSIBILITY—CAPACITY TO WORK—RETRAINING TIME—NEW JOB SKILLS.

The Worker's Disability Act provides for the possibility of vocational rehabilitation benefits at the employer's expense to encourage an injured employee to reequip himself for the labor market; in order to maintain the inducement, an award of rehabilitation benefits is not to affect the right of an employee to benefits provided by the compensation act; therefore, during

the period of rehabilitation, reduction of a claimant's capacity to work by the time spent retraining is a factor to be taken into account in assessing a claimant's wage earning capacity, and a failure to do so results in placing a premium on the acquisition of a new job skill.

8. APPEAL AND ERROR—WORKMEN'S COMPENSATION—PRESERVING IS-
    SUES FOR REVIEW—APPEAL BOARD'S DISCRETION.
    An issue not brought before the Workmen's Compensation Appeal Board was not properly preserved for appellate review; on remand, however, the appeal board in the exercise of its discretion may permit the issue to be raised.

Appeal from the Workmen's Compensation Appeal Board. Submitted December 15, 1976, at Detroit. (Docket No. 28283.) Decided October 10, 1977.

Claim by Carol Frammolino against Richmond Products Company for workmen's compensation benefits. Partial disability benefits granted. Defendant appeals. Remanded for further proceedings.

*Levasseur, Werner, Mitseff & Brown,* for plaintiff.

*Ulanoff, Ross, Summer & Lakritz, P. C.,* for defendant.

Before: T. M. BURNS, P. J., and M. J. KELLY and D. F. WALSH, JJ.

D. F. WALSH, J. Defendant appeals from a decision of the Workmen's Compensation Appeal Board ordering it to pay plaintiff partial disability compensation from August 30, 1973, until further order of the board.

Plaintiff began working for defendant, a manufacturer of fiberglass products, in March, 1970. Plaintiff's job duties at various times consisted of

rolling out fiberglass, spraying it into a mold, and grinding, sanding and patching hardened fiberglass. Three times during the course of her employment plaintiff developed a rash on her hands, elbows, knees and the trunk of her body. Each time plaintiff received medical attention and resumed working. The rash subsequently reoccurred and plaintiff did not return to work after May 12, 1972.

Defendant voluntarily paid. plaintiff worker's disability compensation from her last day of work until November 23, 1972, at which time it ceased payments on the basis that medical reports indicated that plaintiff was again employable. Plaintiff petitioned the Bureau of Workmen's Compensation for a hearing on her right to continued compensation which hearing was conducted on August 30, 1973.

At the hearing plaintiff testified that she left defendant's employ on the advice of the two doctors with whom she treated at the company's direction, Dr. McClellan and Dr. Nowland. Because there was fiberglass throughout defendant's factory, plaintiff was of the opinion that she was unable to perform any job on the premises.

In June, 1972, plaintiff sought job training through the Vocational Rehabilitation Services Division of the Michigan Department of Education. Through the department plaintiff enrolled in a two-year program at Macomb County Community College for training as a medical laboratory technician. The college required registration one year in advance. Plaintiff registered, therefore, and then took several courses during the year prior to formal entry into the program. As a result, her course load was reduced and she was able to work part-time during her two-years of training.

Plaintiff testified that during the summer of 1973, she applied for full-time work at a minimum of three factories, all three of which eventually offered her a job. However, since plaintiff had already accepted part-time employment as a drugstore clerk so as to be able to attend school, she refused the offers.[1]

Plaintiff introduced letters from Dr. McClellan and Dr. Nowland and the deposition of Dr. Andrew Segal in which the doctors attributed plaintiff's condition to her exposure to fiberglass. The deposition of Dr. Plotnick, introduced into evidence by the defendant, stated that plaintiff's rash was the result of exposure to epoxy or hardeners, and not fiberglass.

James Bennett, production manager of Richmond Products, testified that plaintiff could work in the plant as a crib supply attendant or an inspector without exposure to epoxy or free fiberglass and offered either position to plaintiff.

In his decision, the hearing referee found that plaintiff was totally disabled from May 13, 1972, to August 30, 1973, and ordered defendant to pay plaintiff $95 per week for that period. The referee also found, however, that, as a definite job offer within plaintiff's physical capabilities had been made at the hearing, plaintiff's refusal to accept the offer terminated her right to compensation as of that date.

---

[1] Plaintiff initially testified that she applied to four factories for employment, one of which was Gemini Corporation, and received offers from all four. James Bennett, subsequently called by the defense, testified that Gemini was another subsidiary of defendant's parent corporation, PRF Industries. When asked for his reaction to plaintiff's possible testimony that she was refused employment at Gemini because no openings existed, Bennett responded that the company had been looking for employees and that such testimony would be untrue. Plaintiff thereafter took the stand, admitted that her earlier testimony was misleading, and testified that Gemini was refusing applications for employment at the time she sought a job there. Given our decision, we need not resolve the testimonial dispute.

Plaintiff appealed the referee's decision to the Workmen's Compensation Appeal Board arguing that neither position offered by defendant was within her physical limitations and that, in any event, she should not be required to discontinue her rehabilitation efforts. Defendant denied plaintiff's first contention and argued that since plaintiff voluntarily rejected favored work in order to pursue the training program, she was precluded from receiving further benefits.

In an opinion signed by three members, the board found that the work offered plaintiff was not within her medical limitations as she would continue to be exposed to the pollutants to which she was allergic. The majority opinion further held that even if the jobs met plaintiff's physical capabilities, her refusal was justified as she was cooperating fully in her rehabilitation by pursuing a course of study approved by the Michigan Department of Education.[2] The order, signed by four members, provided:

"[T]he decision of the Hearing Referee in this cause shall be and it hereby is modified, and defendant shall pay $95.00 per week from May 12, 1972, to the date of trial (August 30, 1973), and thereafter in accord with the provisions of 418.361 CL 1970 (partial disablement) until further order of the Bureau."

On appeal defendant challenges the decision of the Workmen's Compensation Appeal Board regarding the offered employment as unsupported by

[2] A concurring opinion reversed the referee's termination of benefits on the first ground alone. In a dissenting opinion, the fifth member of the board agreed with the majority that the employment offered plaintiff entailed the risk of further injury but rejected the remainder of the controlling opinion as altering the law regarding favored work and requiring an employer to rehabilitate an employee beyond his original job status.

the record and legally incorrect, attacks the award of partial disability compensation as similarly unsupported, argues that a job offer by another subsidiary of defendant's parent corporation constituted an offer of favored work by the defendant, and assails the board's opinion as inadequate in failing to enunciate the testimony relied upon, the law applied and the reasoning followed.

Findings of fact of the Workmen's Compensation Appeal Board, where supported by competent, material and substantial evidence on the whole record, are conclusive in the absence of fraud. Questions of law may be reviewed. Const 1963, art 6, § 28, MCLA 418.861; MSA 17.237(861), *Galac v Chrysler Corp,* 63 Mich App 414; 235 NW2d 359 (1975).

In the case at bar, the Workmen's Compensation Appeal Board, in deciding that defendant's job offers were not within plaintiff's capabilities, applied the correct legal standard[3] and its decision is

---

[3] An injured employee who refuses to accept an employer's offer of "favored work", that is, work which the employee is capable of performing, is not entitled to worker's disability benefits. *Lynch v Briggs Manufacturing Co,* 329 Mich 168; 45 NW2d 20 (1950), *Hope v Welch Grape Juice Co,* 46 Mich App 128; 207 NW2d 476 (1973). The author of the concurring opinion, with whom the majority agreed, wrote:

"Principals are aware that a claimant is not required to accept work which could cause further injury. *Stewart v Lakey Foundry & Machine Co,* 311 Mich 463 [18 NW2d 895 (1945)], and *Allen v National Twist Drill & Tool Co,* 324 Mich 660 [37 NW2d 664 (1949)], speak on the subject."

Defendant argues that the quoted language indicates that the board found that plaintiff could reject any job which might result in any injury, rather than only those jobs which she was physically unable to perform.

Defendant's contention is without merit. Admittedly, the decisions cited in the concurrence do not directly deal with the favored work doctrine. The decisions do, however, define "disability" as the inability to earn full wages at the employment at which the employee was last subjected to the conditions resulting in the disability. The concurring opinion clearly found that plaintiff could refuse the offered employment without affecting her right to benefits, not because any

fully supported by the record.[4] Given the present state of the record, however, this Court is unable to review the board's award of partial disability benefits.

In order to permit this Court to review its decisions properly the Workmen's Compensation Appeal Board must indicate the testimony adopted, the standard followed and the reasoning used in reaching its conclusion. *Leskinen v Employment Security Commission,* 398 Mich 501; 247 NW2d 808 (1976), *Moore v Gundelfinger,* 56 Mich App 73; 223 NW2d 643 (1974). In the present case, the Workmen's Compensation Appeal Board simply ordered that plaintiff be paid partial disability

injury could occur, but because it would result in the same disabling condition. In any event, the controlling opinion demonstrates application of the correct legal principle:

"I agree with Mr. Krapohl's holding that the work offered was not shown to be free from the airborne pollutants *to which she is allergic.* However, even if we assume that the work offered at the scene of the battle complies *with the medical specifications that she not be further exposed to the causes and conditions which caused disablement * * * ".* (Emphasis supplied.)

[4] Dr. Nowland, Dr. McClellan and Dr. Segal were of the opinion that plaintiff suffered from fiberglass dermatitis or an allergic reaction to fiberglass. Dr. Segal testified that the condition could reoccur if plaintiff was exposed to free fiberglass in the air. Dr. Plotnick was of the opinion that plaintiff was allergic to epoxy and hardeners and should avoid exposure to the two, their fumes, or their release into the air caused by the sanding of hardened fiberglass.

Plaintiff testified that defendant's operations were housed in one large plant and a warehouse separated from the plant by a dock. Fiberglass was everywhere, even in the shipping and receiving department where repair work was done. According to defendant's production manager, the two jobs offered plaintiff would be free of contact with epoxy and free fiberglass. However, the position of crib attendant was located in a semi-enclosed crib in the same building as manufacturing and repair operations and the job of inspector was located in the warehouse 100 feet away from where repair operations involving fiberglass dust were conducted. Plaintiff had earlier testified that repair work consisted of sanding and grinding the product and then patching with a resin and hardener. Clearly, the board was justified in finding that whether plaintiff's disablement was caused by fiberglass dust or epoxy and hardeners, plaintiff would be exposed to the aggravating conditions if she accepted the offered employment opportunities.

benefits as of August 30, 1973. Plaintiff's right to such benefits is not discussed at all in the controlling opinion.[5] This Court is unaware of the legal standard applied, the testimony relied upon and the board's reasoning. Therefore, the present case must be remanded so that the board can supply the information necessary for appellate review.[6] In doing so, the board is to be guided by the following legal principles.

Under the Workers' Disability Compensation Act it is the loss of wage earning capacity and not the actual loss of wages which is compensable. *Sims v R D Brooks, Inc,* 389 Mich 91; 204 NW2d 139 (1973), *Miller v Midwest Foundry Corp,* 57 Mich App 761; 226 NW2d 721 (1975). MCLA 418.361; MSA 17.237(361) provides:

"While the incapacity for work resulting from the injury is partial, the employer shall pay, or cause to be paid to the injured employee a weekly compensation equal to 2/3 of the difference between his average weekly wages before the injury and the average weekly wages *which he is able to earn* thereafter * * * ." (Emphasis supplied.)

See, also, MCLA 418.371; MSA 17.237(371). A claimant's wage earning capacity following his injury is a question of fact. *Hlady v Wolverine Bolt Co,* 393 Mich 368; 224 NW2d 856 (1975), *Ward v Detroit Board of Education,* 72 Mich App 568; 250 NW2d 130 (1976). Wage earning capacity is

---

[5] The concurring opinion provides no further elucidation:

"Therefore, the Referee's decision is modified, and defendant shall pay ninety-five dollars ($95.00) per week from May 12, 1972, to the date of trial (August 30, 1973), and thereafter until further order of the Bureau. The compensation rate is subject to computation with consideration of the wages earned since July 9, 1973, in accord with the provisions of 418.361 CL 1970."

[6] In performing its duty on remand, the board may, within its discretion, take additional evidence. MCLA 418.859; MSA 17.237(859).

not limited to wages actually earned although that is one factor to be considered. *Hood v Wyandotte Oil & Fat Co,* 272 Mich 190; 261 NW 295 (1935), *Medacco v Campbell, Wyant & Cannon Foundry Co,* 48 Mich App 217; 210 NW2d 360 (1973). Also to be considered are the capacity of the claimant to work and the opportunity to obtain suitable employment. *Hood v Wyandotte Oil & Fat Co, supra, Pulley v Detroit Engineering & Machine Co,* 378 Mich 418; 145 NW2d 40 (1966). The burden of proving a reduced earning capacity is upon the plaintiff. *Pulley v Detroit Engineering & Machine Co, supra, Hlady v Wolverine Bolt Co, supra.*

The controlling opinion of the board in the present case indicates that a majority of the members were persuaded to award plaintiff partial disability benefits because of her efforts to acquire a new job skill. We too find plaintiff's educational pursuits commendable. Nevertheless, on remand, the reduction in plaintiff's availability for employment due to her studies is not to be considered in determining whether plaintiff's wage earning capacity has been reduced unless she first obtains an adjudication that defendant is financially responsible for her training as a medical laboratory technician.

One of the purposes of testing the right to worker's disability benefits by a reduction in wage earning capacity, rather than solely by a reduction in wages actually earned, is to preclude a claimant from benefiting from a unilateral decision to refrain from employment. *Hood v Wyandotte Oil & Fat Co, supra, Pulley v Detroit Engineering & Machine Co, supra.* In the present case, if plaintiff's studies represent a personal choice regarding career objectives, rather than rehabilitation necessitated by her work-related injury, the defendant

is not responsible for that aspect of plaintiff's diminished earning capacity.

The Worker's Disability Compensation Act provides for the possibility of vocational rehabilitation benefits at the employer's expense. MCLA 418.319; MSA 17.237(319). By providing for such benefits, the Legislature sought to encourage an injured employee to reequip himself for the labor market. In order to maintain the inducement, an award of rehabilitation benefits is not to affect the right of an employee to the benefits provided by MCLA 418.361; MSA 17.237(361). *Barrett v Bohn Aluminum & Brass Co,* 69 Mich App 636; 245 NW2d 147 (1976). During the period of rehabilitation, therefore, reduction of a claimant's capacity to work by the time spent retraining is a factor to be taken into account in assessing a claimant's wage earning capacity. Failure to do so results in placing a premium on the acquisition of a new job skill.

The instant case does not present such a situation. The record contains no indication that plaintiff initiated the statutory procedure for determining her right to vocational rehabilitation benefits by petitioning the director of the Workmen's Compensation Bureau for a hearing on the matter.[7]

---

[7] MCLA 418.319; MSA 17.237(319) provides in relevant part:

"An employee who has suffered an injury covered by this act shall be entitled to prompt medical rehabilitation services. When as a result of the injury he is unable to perform work for which he has previous training or experience, he shall be entitled to such vocational rehabilitation services, including retraining and job placement, as may be reasonably necessary to restore him to useful employment. If such services are not voluntarily offered and accepted the director on his own motion or *upon application of the employee* or carrier or employer, *after affording the parties an opportunity to be heard, may refer the employee to a bureau-approved facility for evaluation* of the need for, and kind of service, treatment or training necessary and appropriate to render him fit for a remunerative occupation. *Upon receipt of such report, the director may order that the services and treatment recommended in the report be provided at the expense of the employer."* (Emphasis supplied.)

In the present case, not only does the record contain no indication

The fact that plaintiff, upon following the proper procedure, might have been entitled to rehabilitation benefits, does not permit the Workmen's Compensation Appeal Board simply to order partial disability benefits in their stead.

Following the release of this opinion, plaintiff will be permitted 30 days within which to petition the director of the bureau pursuant to MCLA 418.319; MSA 17.237(319), should she so desire. If it is determined that plaintiff's training as a lab technician is chargeable to defendant, the time which such studies require is a factor to be considered in assessing her wage earning capacity. If the director rejects plaintiff's claim, or if plaintiff fails to take advantage of the opportunity presently offered, the board is to determine plaintiff's wage earning capacity without regard to the effect of the training program upon plaintiff's job availability.

Defendant's final contention that an offer of employment by Gemini Corporation constituted an offer of favored work by the defendant was not raised before the Workmen's Compensation Appeal Board and, therefore, need not be addressed by this Court.[8] *Kushay v Sexton Dairy Co,* 394 Mich 69; 228 NW2d 205 (1975), *Medacco v Campbell,*

that plaintiff sought to avail herself of vocational rehabilitation benefits, but the controlling opinion of the appeal board expressly found:

"The only error reasonably chargeable to plaintiff would seem to be her failure to invoke the provisions of 418.319 in order to relieve the general taxpayers of this State from the expenses incurred by the Department of Vocational Rehabilitation in the retraining program."

[8] According to plaintiff's brief to the Workmen's Compensation Appeal Board, defendant wrote plaintiff a letter, approximately one month after the hearing, offering her employment at Gemini Corporation. While defendant, in its responsive brief, did discuss the job offer at Gemini Corporation, defendant argued only that the offer demonstrated its good faith efforts to secure employment for plaintiff and plaintiff's uncooperative attitude and voluntary withdrawal from the labor market.

*Wyant & Cannon Foundry Co, supra.* On remand, however, the appeal board in the exercise of its discretion may permit the defendant to raise the issue. *Kushay v Sexton Dairy Co, supra.*

Remanded for proceedings consistent with this opinion. Jurisdiction is retained. The Workmen's Compensation Appeal Board shall certify its decision to this Court within 30 days following a determination as to plaintiff's right to vocational rehabilitation benefits, or, if no such ruling is sought, within 30 days following expiration of the time permitted plaintiff for the filing of a petition seeking such benefits. Thereafter, defendant will have 20 days to file a supplemental brief should it so desire. If defendant does so, plaintiff will be permitted 20 days within which to respond.

No costs, each party having partially prevailed.